**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

_____

**KEITH DUDA,**

**and**

**CAITLYN DUDA**

　　　Plaintiffs,

v.

**BILL ELDER as SHERIFF OF EL PASO COUNTY SHERIFF'S OFFICE,**

**and**

**BILL ELDER,**
**in his individual capacity,**

　　　Defendants.

_____

## COMPLAINT

_____

　　　COME NOW, Plaintiffs, Keith Duda and Caitlyn Duda, and for their Complaint against

the Defendants, allege the following:

### Introduction

　　　1.　　　The Plaintiffs, Keith and Caitlyn Duda, are former and current employees,

respectively, of the El Paso County Sheriff's Office ("EPSO").  Keith Duda is also Caitlyn

Duda's father.  When Plaintiffs learned that an EPSO Lieutenant, Bill Huffor, had engaged in

unwelcome sexual harassment of a female EPSO employee, they reported that sexual harassment

for investigation in compliance with EPSO policy.  Caitlyn Duda also participated as a witness in the investigation of Keith Duda's report of sexual harassment.  After Keith Duda reported Lt. Huffor's sexual harassment, Caitlyn Duda suffered unlawful retaliation initiated by Lt. Huffor in the form of an unwarranted disciplinary action.  Caitlyn Duda then made a report of unlawful retaliation to EPSO about Lt. Huffor's conduct.  After Caitlyn Duda reported Lt. Huffor's retaliation, EPSO unlawfully retaliated against Keith Duda by denying him a promotion.  When Caitlyn Duda requested public records related to both complaints, she received a second unwarranted disciplinary action.  The Plaintiffs now bring this proceeding for damages to redress violations of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, for unlawful retaliation.

2.      Additionally, Defendants retaliated against Keith Duda for his protected political speech in violation of the First Amendment.  During his re-election campaign, Sheriff Elder sent a memo to his command staff requesting "institutional loyalty," stating that EPSO employees represent him personally, stating that EPSO employees were not free to criticize him, and threatening that EPSO employees who "place blame" are "part of the problem" and "will not survive."  Keith Duda supported Sheriff Bill Elder's opponent, Mike Angley.  Keith Duda also spoke to local Colorado Springs press regarding discrimination, retaliation, and political retribution within the EPSO.  EPSO then investigated Keith Duda's protected speech.  The investigation concluded on July 13, 2018.  At the conclusion of the investigation, EPSO terminated Keith Duda's employment via a letter signed by Sheriff Elder on July 12, 2018, prior to the conclusion of the investigation.  The termination letter from Sheriff Elder cited Keith Duda's "political activities" as one reason for the termination.  Keith Duda now brings this

proceeding for damages to redress violations of his First Amendment rights pursuant to 42 U.S.C. § 1983.

## Jurisdiction

3.      The Court has jurisdiction over the subject matter of this case pursuant to 42 U.S.C. §§ 1983 and 1988, 28 U.S.C. §§ 1331 & 1343, and 42 U.S.C. § 2000e-5.

## Venue

4.      The unlawful employment actions described below were committed in El Paso County in the state of Colorado.

5.      Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(b).

## Parties

6.      Caitlyn Duda is a resident of Colorado Springs, Colorado, and is employed as a Detentions Specialist by the EPSO.

7.      Keith Duda is a resident of Colorado Springs, Colorado and is a former employee of the EPSO where he worked as a Sergeant.

8.      EPSO is a law enforcement organization that operates under the authority of the Sheriff.

9.      EPSO is responsible for conducting various law enforcement and detention functions within El Paso County, Colorado.

10.      Bill Elder is the elected Sheriff of El Paso County.

11.      Sheriff Elder has exclusive control over the hiring and firing of EPSO employees pursuant to Colorado statute.

**General Allegations**

12.     All prior allegations are incorporated herein.

13.     For approximately two decades, spanning the administration of three Sheriffs, the EPSO has been plagued by a rampant culture that encourages and tolerates sexual harassment.

14.     Over the last twenty years, and in the administrations of the three Sheriffs who have held the office, employees from the rank of Deputy all the way up the Undersheriff and Sheriff have been accused of sexual harassment and inappropriate behavior of a sexual nature.

15.     For years, employee complaints of sexual harassment were investigated by officers in the internal affairs department who had no training on what constituted sexual harassment, the law governing sexual harassment, or how to investigate sexual harassment complaints.

16.     Within the last two years, the EPSO has had three different systems for investigating sexual harassment complaints in place.

17.     In February 2017, the EPSO made a change from having internal affairs investigate complaints of sexual harassment to having El Paso County's Human Resources office conduct those investigations.

18.     The change from sexual harassment investigations by internal affairs to Human Resources was made for purposes of transparency and to avoid the potential conflict of interest inherent in having members of the EPSO investigating their coworkers.

19.     In or around June, 2017, EPSO changed course and determined that sexual harassment and other employment discrimination complaints would be investigated by an Employment Investigative Specialist employed in the El Paso County Attorney's Office.

20.     The career trajectories of employees who were found to have engaged in sexual harassment or inappropriate conduct of a sexual nature were not affected by those acts, and those employees often were promoted up the ranks in the EPSO, some reaching ranks as high as Lieutenant and Commander.

21.     For at least a decade, EPSO employees who held the rank of Lieutenant or above were not required to receive training on the EPSO's anti-harassment policies.

22.     In cases where EPSO employees have committed sexual harassment, harassers have been permitted to continue supervising their victims, and one employee's demotion as discipline for sexual harassment was met with a rally by EPSO employees, including a Lieutenants and Commander.

23.     Despite multiple policy changes, numerous lawsuits and complaints of discrimination, and significant public scrutiny, sexual harassment remains a pervasive problem within the EPSO.

24.     Caitlyn Duda began her employment with EPSO in 2014.

25.     Caitlyn Duda is currently employed by the EPSO as a Security Technician.

26.     Keith Duda worked as an employee of the EPSO for approximately twelve years.

27.     Keith Duda is Caitlyn Duda's father.

28.     At all times relevant to the Complaint, EPSO knew that Keith Duda was Caitlyn Duda's father.

29.     On or about November 13, 2016, Keith Duda and Caitlyn Duda attended a brunch with some of Caitlyn's co-workers from the EPSO.

30.     During that brunch, one of the women present, a young female EPSO employee, commented that EPSO Lt. Bill Huffor had engaged in unwelcome behavior of sexual nature that was directed toward her at work.

31.     The female deputy stated that Lt. Huffor had made sexually inappropriate comments to her and also touched her.

32.     Lt. Bill Huffor is a close friend of Sheriff Elder.

33.     Bill Huffor's wife, Janet Huffor managed Sheriff Elder's first campaign for Sheriff.

34.     When Sheriff Elder took office on January 1, 2015, one of his first acts was to promote Bill Huffor to Sergeant.  Sheriff Elder also hired Janet Huffor as his Chief of Staff on January 1, 2015.

35.     On June 20, 2016, Sheriff Elder promoted Bill Huffor from Sergeant to Lieutenant.

36.     No other EPSO Sergeant has been promoted to Lieutenant with less than one and one-half years' experience working as a Sergeant.

37.     While at the November 13, 2016 brunch, Keith Duda heard the comments from the young woman about Lt. Huffor's behavior.

38.     The EPSO has an anti-discrimination policy in effect that claims to be more comprehensive in what it prohibits than either state or federal law.

39.     The EPSO anti-discrimination policy states that EPSO "is committed to creating and maintaining a work environment that is free of all forms of discriminatory harassment, including sexual harassment and retaliation" and states that such behavior will not be tolerated.

40.     The EPSO anti-discrimination policy states the following concerning reports of discrimination or harassment:

> Members are encouraged to promptly report any discriminatory, retaliatory or harassing conduct or known violations of this policy to a supervisor. Any member who is not comfortable with reporting violations of this policy to his/her immediate supervisor may bypass the chain of command and make the report to a higher ranking supervisor or manager. Complaints may also be filed with the Sheriff, Administrative Lieutenant or the County Administrator.
>
> Any member who believes, in good faith, that he/she has been discriminated against, harassed, subjected to retaliation, or who has observed harassment or discrimination, is encouraged to promptly report such conduct in accordance with the procedures set forth in this policy.
>
> Supervisors and managers receiving information regarding alleged violations of this policy shall determine if there is any basis for the allegation and shall proceed with resolution as stated below.

41.     Keith Duda understood that to comply with EPSO policy, he was required to report the information that he had learned about Lt. Huffor because it could constitute sexual harassment.

42.     After he learned of the allegations that Lt. Huffor had engaged in conduct toward a young female deputy that could constitute sexual harassment, Keith Duda reported those allegations to EPSO on or around November 13, 2016.

43.     Keith Duda reported the allegations about Lt. Huffor to Lt. Mitchell.

44.     Lt. Mitchell told Keith Duda to report the allegations to Lt. Deno.

45.     In accordance with Lt. Mitchell's instructions, Keith Duda prepared a memo to Lt. Deno reporting the information that he had learned.

46.     Keith Duda also instructed Caitlyn Duda to report what she knew about the alleged sexual harassment of her friend and co-worker.

47.     On or about November 18, 2016, EPSO contacted Caitlyn Duda and directed her to report to Internal Affairs to be interviewed as part of the EPSO's investigation into Lt. Huffor's potential sexual harassment of a female deputy.

48.     On or about November 18, 2016, Sgt. Bill Otto interviewed Caitlyn Duda in Internal Affairs as part of the investigation into Lt. Huffor's conduct.

49.     Lt. Huffor knew that EPSO interviewed Caitlyn Duda as a witness in the investigation into his misconduct.

50.     At the time, EPSO policy required Internal Affairs to investigate complaints of sexual harassment.

51.     EPSO's investigation into Lt. Huffor's conduct resulted in a finding that Lt. Huffor engaged in conduct unbecoming of an employee of the EPSO.

52.     EPSO sustained the finding of conduct unbecoming against Lt. Huffor based in part on at least one "immoral, indecent, or lewd" comment he made to the young female deputy that was found to expose the EPSO to potential liability.

53.     Lt. Huffor received a letter of counseling as discipline for his unbecoming conduct on or about January 20, 2017.

54.     On or around May 14, 2017, Caitlyn Duda's supervisor informed her that EPSO was investigating her for potential misconduct.

55.     The alleged misconduct included Caitlyn Duda directing profanity at an inmate in the jail who had repeatedly refused to follow a directive to lock down.

56.     Other similarly situated employees regularly use profanity as part of the continuum of force in order to obtain compliance with directives given to inmates.

57.     At the conclusion of its investigation into Caitlyn Duda, EPSO gave her letter of reprimand.

58.     Caitlyn Duda believed that the letter of reprimand was unduly harsh.

59.     To Caitlyn Duda's knowledge, EPSO had never taken a disciplinary action against other employees who direct profanity at inmates in order to obtain compliance with directives.

60.     Caitlyn Duda asked her supervisor, Lt. Sarkisian, why the disciplinary action was so harsh in her case.

61.     Lt. Sarkisian replied that the disciplinary action was harsh because Lt. Huffor had initiated the investigation.

62.     Lt. Huffor used his authority as a lieutenant to commence an investigation into a witness against him in a sexual harassment investigation.

63.     Lt. Huffor used his authority as a lieutenant to influence the imposition of discipline against an employee who had provided information as a witness in a sexual harassment investigation against him.

64.     Caitlyn Duda informed Keith Duda that she had been subjected to disciplinary action based on an investigation that was initiated by Lt. Huffor.

65.     At the time that Caitlyn Duda complained of retaliation by Lt. Huffor to Human Resources, Keith Duda was competing for a promotion to the VNI Sergeant position.

66.     On May 23, 2017, Keith Duda informed his Commander that he was interested in transferring into the open VNI Sergeant position.

67. Keith Duda's Commander told him that he thought Keith Duda would be a great fit for the position and that he would advocate on his behalf.

68. On May 30, 2017, EPSO published an announcement seeking applicants for the VNI Sergeant position.

69. Keith Duda applied for the VNI Sergeant position.

70. After applying for the VNI Sergeant position, Keith Duda set up meetings with leadership of the VNI team to discuss his interest in the position and his qualifications.

71. Keith Duda also spent a full shift shadowing a sergeant on the VNI team in preparation for further interviews for the position.

72. On the morning of June 9, 2017, Lt. Mitchell contact Keith Duda to set up an oral board date and time for interviews for the VNI position.

73. Keith Duda initially agreed to an interview time of June 15, 2017 at 1:00 p.m.

74. Lt. Mitchell then stated he was contacting another candidate, Sgt. Manzanilla, to set up a time for his interview.

75. A short time later, Lt. Mitchell called Keith Duda to change the time of his interview due to a conflict because of a staff meeting.

76. Lt. Mitchell and Keith Duda agreed to change the interview to 10:00 a.m. on June 15, 2017.

77. Also on June 9, 2017, after scheduling his interview with Lt. Mitchell, Keith Duda told Caitlyn Duda that she needed to contact El Paso County Human Resources to file a complaint of retaliation against Lt. Huffor.

78.    On June 9, 2017, Caitlyn Duda contacted El Paso County Human Resources and made a complaint of retaliation against Lt. Huffor based upon the unwarranted disciplinary action.

79.    Within hours of Caitlyn Duda contacting Human Resources to file a retaliation complaint against Lt. Huffor, Keith Duda received another call from Lt. Mitchell on the afternoon of June 9, 2017.

80.    In the phone call on the afternoon of June 9, 2017, Lt. Mitchell asked Keith Duda if there was anything going on that he should be aware of.

81.    Keith Duda responded, "Nothing that I'm aware of."

82.    Lt. Mitchell then told Keith Duda that he had received a call from Commander Hatch who told Lt. Mitchell to standby on scheduling interviews for the VNI Sergeant position as there may not be a need for interviews.

83.    Lt. Mitchell told Keith Duda that when he asked Commander Hatch for an explanation, Commanded Hatch stated that Keith Duda would not be moving forward through the interview process as a candidate, and that Commander Hatch was not at liberty to discuss the reason why.

84.    On June 12, 2017, Commander Hatch contacted Keith Duda and told him that he had reviewed his application materials for the VNI Sergeant position.

85.    Commander Hatch stated that while Keith Duda's application materials were exceptional, Keith Duda would not be selected for the VNI Sergeant position.

86.    Commander Hatch then stated that Sgt. Manzanilla would be given the position.

87.     Commander Hatch explained that by giving Sgt. Manzanilla the position, the team would "be able to hit the ground running."

88.     Commander Hatch's explanation for the decision to give the position to Sgt. Manzanilla is false and is a pretext to cover up illegal retaliation by the EPSO.

89.     Keith Duda has as much experience, if not more, as Sgt. Manzanilla and would be able to hit the ground running if that were the requirement for the successful candidate for the position.

90.     The recommendation letter written by Keith Duda's lieutenant states, "Sergeant Duda's experience with the Crime Reduction Unit will reduce his learning curve during his transition to Metro VNI.  He already has experience working with members of VNI, EPSO's SWAT Team, CSPD's TEU and the numerous other agencies."

91.     Commander Hatch offered no explanation for why a competitive promotion process was suddenly changed to one that did not require an oral board or interview.

92.     Keith Duda continued to work for EPSO as a Sergeant following EPSO's decision not transfer him to VNI Sergeant position.

93.     In early September 2017, Caitlyn Duda made an open records request for documents pertaining to the investigation she participated in and for documents pertaining to her complaint of retaliation.

94.     On September 11, 2017, that request was denied.

95.     In the fall of 2017, Sheriff Elder ran for re-election as the El Paso County Sheriff.

96.     Keith Duda supported Sheriff Elder's opponent, Mike Angley.

97.     Keith Duda campaigned in support of Mike Angley.

98.     On October 10, 2017 Mike Angley's website announced Keith Duda's endorsement of Mike Angley for Sheriff.

99.     The October 10, 2017 announcement stated:

The Committee is pleased to announce that Keith Duda, an active member of the El Paso County Sheriff's Office (EPSO), has joined 'Angley's Posse.'

Keith has lived in Colorado Springs for over 23 years and loves our community. He's also been a local business owner since 1995. Keith joined the EPSO in 2006, working Detentions, Patrol, and Special Operations. He is currently a Sergeant assigned to patrol.

We're delighted to have Keith on board and hope that his addition will inspire many others currently serving at EPSO to join Angley's Posse.

100.    In addition to providing his endorsement on Mike Angley's website, Keith Duda also volunteered as a member of the Angley campaign committee.

101.    Keith Duda distributed campaign signs on behalf of Mike Angley.

102.    Keith Duda handed out flyers door to door and spoke to residents on behalf of Mike Angley.

103.    Keith Duda attended campaign meetings at Mike Angley's house.

104.    On October 30, 2017, EPSO wrote up Caitlyn Duda for having her cell phone in her purse while at work.

105.    Caitlyn Duda's cell phone was turned off and she was not using it.

106.    Caitlyn Duda's supervisor asked her if she had her phone, and she told him it was in her purse.

107.    The EPSO does not prohibit employees from carrying personal cell phones at work.

108.     The EPSO does not have any policy prohibiting employees from bringing their cell phones to work.

109.     Other employees of the EPSO regularly bring their cell phones to work, and often carry them on the floor in the jail.

110.     No other similarly situated employees were written up for having their personal cell phone with them at work.

111.     On multiple occasions after Keith Duda's support Sheriff Elder's opponent was announced, Sheriff Elder would glare at Keith Duda when he saw him in the office or at meetings.

112.     On one occasion, Sheriff Elder glared angrily at Keith Duda, and a witness who observed Sheriff Elder's demeanor commented to Keith Duda that "if looks could kill, you would be dead."

113.     The campaign between Sheriff Elder and Mike Angley to be named the Republican candidate for El Paso County Sheriff continued into 2018.

114.     The El Paso County Republican Party held its Assembly on March 24, 2018 to determine who would appear on the ballot in the Republican primary.

115.     On March 26, 2018, Keith Duda learned from two individuals that at the Republican County Assembly, Lt. Huffor was harassing and intimidating individuals who he believed supported Mike Angley's candidacy.

116.     A former EPSO employee informed Keith Duda that he believed Lt. Huffor's conduct rose to the level of menacing.

117.    A current EPSO employee informed Keith Duda that he was so intimidated by his interaction with Lt. Huffor that he left the County Assembly without casting his ballot.

118.    On March 27, 2018, Keith Duda reported these interactions to Professional Standards.

119.    On April 23, 2018, Keith Duda received a memo from Professional Standards informing him that its investigation did not sustain any violations of EPSO policy by Lt. Huffor at the Assembly.

120.    On April 27, 2018, Keith Duda encountered Sheriff Elder at a volunteer celebration at the Space Foundation.

121.    Sheriff Elder interacted with Keith Duda in a hostile manner and ordered him to leave the celebration.

122.    As a result of the hostile behavior and angry looks Sheriff Elder was directing at him, Keith Duda stopped attending public events for the EPSO or related entities.

123.    Keith Duda did not attend a memorial for fallen officers on May 18, 2018 because he wanted to avoid being subjected to any additional hostility from Sheriff Elder.

124.    In the summer of 2018, Sheriff Elder sent an "Expectations" Memo to EPSO command staff.

125.    The Expectations Memo from Sheriff Elder states, "*I expect you to be respectful and insist that others are as well. **YOU** represent **ME** not just the Sheriff's Office. Everything you do and say reflects on **ME**, not just the Sheriff's Office.*" (italics, bold, and capital letters in original).

126.    The Expectations Memo from Sheriff Elder further states, "***You are not free to start rumors, engage in side bar or closed door discussions, or become outwardly critical of me or ANY member of the staff.***"

127.    The Expectations Memo from Sheriff Elder further states, "*__I expect__ you to be part of the team - act like a team - support the team - help and support your teammates. You are a member of my staff? You owe institutional loyalty. If you can't handle that expectation, if your heart is not in the requirements of this job, if your head is not behind me, it is time for you to step down or maybe even step out. Leave with your integrity intact.*"

128.    The Expectations Memo from Sheriff Elder further states, "*If you would rather complain behind closed doors or thru an anonymous website, point fingers, place blame or you do not stop those who do, **you are part of the problem**. People inside and outside of this organization see it and talk about it. I hear it, see it and watch it and I am tired of it.*"

129.    Finally, the Expectations Memo from Sheriff Elder threatens, "*If you can't or won't recognize character issues, morality issues, ethical issues, then check out now because you will not survive. **I will take the stripes, bars and/or stars back**.*"

130.    On May 31, 2018, Janet Huffor, the wife of Lt. Huffor and Sheriff Elder's Chief of Staff, posted a missive on Facebook in which she accused Keith Duda of "defamation and slanderous libel" and conducting surveillance on her home.

131.    Mrs. Huffor wrote that "the gloves are off" and called Keith Duda out by name in her post.

132.    Lt. Huffor posted a similar missive on Facebook that day, and also falsely accused Keith Duda of campaigning for Mike Angley while on duty.

16

133.    Keith Duda was on FMLA leave from work to care for his wife at the time the Huffors made their posts about him on Facebook.

134.    On June 5, 2018, while Keith Duda was still on FMLA leave caring for his wife, his attorney informed First Assistant County Attorney Diana May of the Huffors's conduct on Facebook and that Keith Duda feared he was being targeted by supporters of Sheriff Elder for his political speech.

135.    On June 20, 2018, the EPSO began an investigation into Keith Duda for allegedly 1) engaging in a political activity while on duty as a supervisor, and 2) using his supervisory position while off duty to obtain information for political purposes.

136.    Keith Duda met with a third party investigator, Mark Flynn of Employment Matters, LLC, on June 21, 2018 as part of the EPSO investigation.

137.    Keith Duda gave a prepared statement to Mr. Flynn documenting Lt. Huffor's retaliatory activity after the Dudas' complaints of sexual harassment and retaliation were reported to EPSO.

138.    Keith Duda's statement also expressed that he was suffering retaliation because of his "political affiliation" and "speech on matters of public concern."

139.    During the investigator's interview on June 21, 2018, the investigator informed Keith Duda that EPSO Sergeant Jennifer Vanderpool, Deputy Rachel Lamb, and Lieutenant John David had accused Keith Duda of engaging in political activity by discussing the upcoming Republican primary vote for Sheriff while at work.

140.    Sergeant Vanderpool, Deputy Lamb, and Lieutenant David were each vocal supporters of Sheriff Elder's campaign for the Republican nomination for Sheriff.

17

141.    The accusations that Keith Duda had engaged in political activity at work are false.

142.    On June 22, 2018, EPSO suspended Keith Duda.

143.    The Colorado Republican primary was held on June 26, 2018.

144.    Sheriff Elder defeated Mike Angley in the June 26, 2018 Republican primary.

145.    On July 3, 2018, counsel for Keith Duda sent a letter to Amy Folsom, El Paso County Attorney, detailing three EPSO employees who engaged in political activity in support of Sheriff Elder while on duty in the same manner for which EPSO had investigated Keith Duda.

146.    One of the individuals identified as having engaged in political activity while at work was Bill Huffor, who had solicited volunteers for an Elder campaign event during the workday.

147.    Another individual identified as having engaged in political activity while on duty was John David.

148.    On July 11, 2018, Sheriff Elder announced that he was promoting John David from Lieutenant to Commander.

149.    Rachel Lamb was recently promoted from Deputy to Sergeant.

150.    On July 11, 2018, the Colorado Springs Independent ran an article about Keith Duda in which he detailed the allegations stated herein concerning sexual harassment at the EPSO, retaliation, and intimidation of political opponents.

151.    On July 12, 2018, Amy Folsom sent a letter to Keith Duda stating that El Paso County was conducting an investigation into "suspected or alleged conduct that may violate El Paso County and/or the El Paso County Sheriff's ("EPSO") procedures . . . ."

152.     Also on July 12, 2018, Undersheriff Joseph Breister sent a letter to Keith Duda advising him that "the County is investigating allegations that you may have violated the confidentially requirement regarding workplace investigations . . . ."

153.     Undersheriff Breister's letter directed Keith Duda to report for a second interview with Mark Flynn of Employment Matters, LLC on July 13, 2018 at 10:00 a.m.

154.     Keith Duda attended the interview with Mark Flynn on July 13, 2018.

155.     At the conclusion of the interview, the investigator told Keith Duda that Lt. Michael St. Charles, the Professional Standards Officer, was waiting to speak with him.

156.     Lt. St. Charles entered the room and handed Keith Duda a letter from Sheriff Elder dated July 12, 2018.

157.     The July 12, 2018 letter from Sheriff Elder terminated Keith Duda's employment.

158.     The metadata from the July 12, 2018 termination letter shows that it was created on July 11, 2018, the date of the Colorado Springs Independent article and two days before any investigation by the EPSO was completed.

159.     The July 12, 2018 termination letter references Keith Duda's "political activity" as one reason for the termination of his employment.

## FIRST CAUSE OF ACTION
### (Title VII Retaliation by Sheriff Elder as Sheriff of EPSO against Caitlyn Duda)

160.     Plaintiff Caitlyn Duda realleges and incorporates all paragraphs of this Complaint as though fully set forth herein.

161.     Plaintiff opposed discrimination and retaliation by Lt. Huffor.

162.     Plaintiff participated in the investigation into Lt. Huffor's alleged discrimination.

163.    Lt. Huffor retaliated against Caitlyn Duda with an unwarranted disciplinary action after her participation in the investigation into his alleged sexual harassment.

164.    Plaintiff filed an internal retaliation complaint after she received the unwarranted disciplinary action.

165.    After Plaintiff sought records pertaining to her participation in the investigation and her own complaint of retaliation, she received another unwarranted disciplinary action.

166.    As a direct result of Plaintiff's opposition to activities prohibited by Title VII, Defendant retaliated against Plaintiff by subjecting her to investigation and taking two unwarranted disciplinary actions against her.

167.    But for the protected activity that Plaintiff engaged in, and the protected activity that her father engaged in, she would not have been subjected to two written disciplinary actions.

168.    The retaliation to which she has been subjected to by the EPSO has caused Plaintiff emotional distress and economic loss.

169.    Defendant's retaliatory conduct caused Plaintiff to suffer significant injuries, damages, and losses.

## SECOND CAUSE OF ACTION
### (Title VII Retaliation by Sheriff Elder as Sheriff of EPSO against Keith Duda)

170.    Plaintiff Keith Duda realleges and incorporates all paragraphs of this Complaint as though fully set forth herein.

171.    Plaintiff opposed discrimination and retaliation by Lt. Huffor.

172.    Plaintiff filed a complaint with EPSO regarding Lt. Huffor's alleged discrimination.

173.   After his complaint regarding Lt. Huffor, Plaintiff's daughter suffered unwarranted disciplinary action by Lt. Huffor and EPSO.

174.   Plaintiff Caitlyn Duda then complained to EPSO of retaliation by Lt. Huffor.

175.   After Plaintiff Caitlyn Duda's complaint of retaliation, EPSO denied Keith Duda a transfer for which he was fully qualified.

176.   Sheriff Elder later terminated Keith Duda's employment.

177.   As a direct result of Plaintiff's opposition to activities prohibited by Title VII, Defendant retaliated against Plaintiff by subjecting his daughter to unwarranted disciplinary actions, by denying him a transfer, and by terminating his employment.

178.   But for the protected activity that Plaintiff engaged in, and the protected activity that his daughter engaged in, his daughter would not have been subjected to two written disciplinary actions and he would not have been denied a transfer and had his employment terminated.

179.   The retaliation to which he has been subjected to by the EPSO has caused Plaintiff emotional distress and economic loss.

180.   Defendant's retaliatory conduct caused Plaintiff to suffer significant injuries, damages, and losses.

### THIRD CAUSE OF ACTION
**(Section 1983 - First Amendment Retaliation by Sheriff Elder as Sheriff of EPSO and Sheriff Elder, individually, against Plaintiff Keith Duda)**

181.   Plaintiff Keith Duda realleges and incorporates all paragraphs of this Complaint as though fully set forth herein.

182.    Plaintiff Keith Duda engaged in political campaigning on behalf of Mike Angley in the race for El Paso County Sheriff against Bill Elder.

183.    Keith Duda engaged in political campaigning as a private citizen.

184.    Keith Duda did not engage in political campaigning while performing official job duties or as a result of his official job duties.

185.    Keith Duda's political campaigning for Mike Angley related to the election of the El Paso County Sheriff in 2018.

186.    Keith Duda's political campaigning for Mike Angley related to a matter of public concern: the campaign and election for the El Paso County Sheriff.

187.    Keith Duda was not acting pursuant to his job duties when he engaged in his speech concerning his political support for Mike Angley.

188.    Keith Duda also spoke to the press as a private citizen about a matter of public concern: unlawful discrimination, retaliation, and political retribution in the El Paso County Sheriff's Office and by EPSO members.

189.    Keith Duda was not acting pursuant to his job duties when he spoke to the press about unlawful discrimination, retaliation, and political retribution in the El Paso County Sheriff's Office and by EPSO members.

190.    Keith Duda's speech about unlawful discrimination, retaliation, and political retribution in the El Paso County Sheriff's Office and by EPSO members was not personal to him, but was directed to informing the community at large about acts committed by EPSO employees.

191.    Sheriff Bill Elder was the final policymaking authority for the EPSO.

192.    Sheriff Bill Elder exercised his final policymaking authority to terminate Keith Duda's employment with the EPSO.

193.    Sheriff Elder, acting in his official and individual capacities, terminated Keith Duda's employment for exercising his constitutional right to speak out about matters of public concern.

194.    Sheriff Elder, in his official and individual capacities, thereby deprived Keith Duda of his rights, privileges, and immunities as secured by the First Amendment of the U.S. Constitution.

195.    The actions of Sheriff Elder, in his official and individual capacities, were intentional, willful, and malicious and/or in reckless disregard of Keith Duda's rights as secured by the First Amendment and 42 U.S.C. § 1983.

196.    The right to engage in private political speech on a matter of public concern is clearly established.

197.    The termination of Keith Duda's employment by Sheriff Elder for his protected speech represented the official custom, policy, or practice of the EPSO.

198.    The termination of Keith Duda's employment occurred under color of state law.

199.    The acts of the EPSO and Sheriff Elder have caused Keith Duda great mental anguish, humiliation, degradation, physical and emotional pain and suffering, inconvenience, lost wages and benefits, future pecuniary losses, and other consequential damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief, pursuant to 42 U.S.C. §§ 1981a, 1988, 2000e-5(g), and Fed. R. Civ. P. 54:

a.      Nominal damages;

b.      Nonpecuniary and compensatory damages, including damages for emotional

distress and consequential damages;

c.      Punitive damages against Sheriff Elder in his individual capacity;

d.      An order reinstating Keith Duda;

e.      Back pay, including loss of benefits and seniority, or front pay in lieu of

reinstatement;

f.      Injunctive relief prohibiting Defendants from interfering in any manner with

Plaintiff's exercise of rights secured by the First and Fourteenth Amendments to

the United States Constitution or from basing any actions regarding Plaintiff's

employment upon Plaintiff's exercise of First Amendment rights;

g.      A declaration that Defendants's conduct violated Plaintiff's rights under Title VII

and the First Amendment;

h.      Pre- and post-judgment interest at the highest rate allowed by law;

i.      Costs and reasonable attorneys' fees pursuant to Fed. R. Civ. P. 54 and 42 U.S.C.

§ 1988; and

j.      All other legal or equitable relief to which Plaintiff is entitled.

**JURY DEMAND**

**Plaintiffs request this matter be tried by a jury.**

Respectfully submitted this 9th day of November, 2018.

CORNISH & DELL'OLIO, P.C.


s/Ian D. Kalmanowitz

Ian D. Kalmanowitz, # 32379
Bradley J. Sherman, # 39452
Cornish & Dell'Olio
431 N. Cascade Ave. Suite 1
Colorado Springs, CO 80903
719-475-1204
719-475-1264 (fax)
ikalmanowitz@cornishanddellolio.com
bsherman@cornishanddellolio.com
Attorneys for Plaintiffs

Plaintiffs's address:

P.O. Box 88299
Colorado Springs, CO 80908