IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-02890-RBJ

KEITH DUDA and CAITLYN DUDA,

      Plaintiffs,

v.

BILL ELDER, individually and in his official capacity as Sheriff of the El Paso County Sheriff's Office,

      Defendant.

---

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

---

This matter is before the Court on plaintiffs' partial motion for summary judgment and defendant's motion for summary judgment. ECF Nos. 39, 42. For the reasons below, both motions are GRANTED in part and DENIED in part.

### I. FACTS

The parties do not dispute the following facts. Plaintiffs Keith Duda and Caitlyn Duda are a father and daughter. ECF No. 36 at ¶27. Keith Duda worked at the El Paso County Sheriff's Office ("EPSO") from May 8, 2006 until July 12, 2018. *Id.* at ¶¶26, 99. He worked as a patrol sergeant until his employment ended. ECF No. 15 at ¶7. Caitlyn Duda was hired as a Security Technician at EPSO in July 2014. ECF No. 40-2 at 1. She applied for and received a position as a Detention Specialist in July 2016 and then transferred back to a Security Technician position in June 2017. *Id.* at 2. Defendant William "Bill" Elder is the elected Sheriff of El Paso

County.  *Id.* at ¶¶8–11.  EPSO operates under Sheriff's Elder's authority.  *Id.*  Under Colorado

law defendant has exclusive control over the hiring and firing of EPSO employees.  *Id.*

Upon taking office as sheriff on January 1, 2015, defendant promoted Bill Huffor to

sergeant and appointed Janet Huffor as his Chief of Staff.  *Id.* at ¶34.  Bill Huffor is a Lieutenant

at EPSO and a close friend of defendant.  ECF No. 36 at ¶32.  Janet Huffor is his wife.  She

managed defendant's first campaign for Sheriff.  *Id.* at 33.  Defendant then promoted Bill Huffor

to Lieutenant in June 2016.  *Id.* at ¶35.

On November 13, 2016 plaintiffs attended a brunch with other EPSO employees.  ECF

No. 36 at ¶29.  A female EPSO deputy also attending that brunch made comments about

Lieutenant Bill Huffor.  *Id.* at ¶30.  Those comments suggested to Keith Duda and Caitlyn Duda

that Lt. Huffor had engaged in unwelcome sexual harassment towards the female employee

while at work.  *Id.* at 30, ¶¶47–48; ECF No. 15 at ¶¶30, 47–48.  Keith Duda reported these

allegations about Lt. Huffor to Lt. Mitchell and Lt. Deno.  ECF No. 36 at ¶¶43–44.  EPSO

investigated the allegations against Lt. Huffor.  Sgt. Bill Otto of the Professional Standards Unit

(PSU) of EPSO interviewed Caitlyn Duda in November 2016 as part of the investigation.  ECF

No. 36 at ¶¶47–48.  The investigation concluded that Lt. Huffor had engaged in conduct

"unbecoming" of an EPSO employee.  *Id.* at ¶51.  On January 20, 2017 Lt. Huffor received a

letter of counseling as discipline for this conduct.  *Id.* at ¶53.

In May 2017 Caitlyn Duda was investigated for three incidents involving an inmate that

occurred in late April.  ECF No. 36 at ¶57.  One complaint alleged that Caitlyn Duda cussed at

the inmate, and another alleged that she put her hands on him.  ECF No. 40-2 at 5.  Based on

these incidents she received a Letter of Reprimand ("LOR") on June 8, 2017 and was placed on

probation for 120 days.  *Id.*; ECF No. 36 at ¶57.  The letter was prepared by Cmdr. Rob King.

ECF No. 40-8.  Caitlyn Duda perceived the result as unduly harsh because, to her knowledge,

EPSO had never disciplined other employees for using profanity at inmates.  ECF No. 15 at

¶¶58–59.  She asked her supervisor Lt. Sarkisian about her discipline.  ECF No. 36 at ¶60.

     At the end of May 2017, several new promotions and changes in assignments were

announced at EPSO.  ECF No. 40-9 at ¶8.  As a result, a Sergeant position in the Metro Vice,

Narcotics, and Intelligence ("VNI") Unit opened.  *Id.*  That unit is a "multi-jurisdictional task

force operation."  *Id.*  The May 30, 2017 vacancy announcement included the language "[t]he

selection for this position will be made from the submitted documents and after meeting with the

Investigations Division/VNI chain of command."  ECF No. 40-11.  Two candidates—Sgt.

Manzanilla and plaintiff Keith Duda—applied for the position.  ECF No. 40-11 at 26:17–21.

Keith Duda also discussed the role with VNI leadership and shadowed a VNI Sergeant.  ECF No

36 at ¶69; ECF No. 15 at ¶¶70–71.  Bureau Chief Brad Shannon, who oversaw hiring for the

open position, reached out to Sgt. Manzanilla to discuss it because Sgt. Manzanilla had prior

experience in the VNI unit as a detective.  ECF No. 40-9 at 1–2.

     On the morning of June 9, 2017 Lt. Mitchell informed Sgt. Duda and Sgt. Manzanilla that

interviews for the position would be held on June 15, 2017.  ECF No. 40-12 at ¶13.  Sometime

later Cmdr. Hatch told Lt. Mitchell to inform the candidates that the interviews were on

"standby" because Keith Duda may not be moving forward.  When Lt. Mitchell asked why,

Cmdr. Hatch stated he was not at liberty to discuss the subject.  *Id.* at ¶¶14–15.  Lt. Mitchell

called both candidates to inform them the interviews were on standby.  *Id.* at ¶17.  When

speaking to Keith Duda Lt. Mitchell asked "if there was anything going on that he should be

aware of," and plaintiff responded "[n]othing that I'm aware of."  ECF No. 36 at ¶¶80–81.  A few days later Cmdr. Hatch informed Lt. Mitchell that Keith Duda would not be moving forward in the process, that Sgt. Manzanilla would be transferred to the open VNI Sergeant position, and that the interviews should be cancelled.  ECF No. 40-12 at ¶18.  Cmdr. Hatch and Lt. Mitchell informed the two candidates of this decision.  *Id.* at ¶¶19–20.

Also on June 9, 2017, Caitlyn Duda lodged a Title VII retaliation complaint against Sgt. Kinner and Sgt. Huffor.  ECF No. 40-5 at ¶4.  Casey Campbell, an Employment Investigation Specialist and Paralegal at the El Paso County Attorney's office, spoke with Caitlyn Duda that same afternoon.  *Id.* at ¶5.  Caitlyn Duda alleged that her former supervisor Sgt. Kinner would discipline Caitlyn regularly for behavior that other employees also engaged in.  She also stated she was told that her discipline for the cussing incident was harsh because Lt. Huffor initiated the investigation.  *Id.* at ¶¶6, 9.  Campbell interviewed Caitlyn and reviewed the chain-of-command investigation regarding plaintiff's conduct.  *Id.* at ¶12–13.  On July 21, 2017 Campbell concluded there had been no discrimination or retaliation against Caitlyn Duda.  *Id.* at ¶15.

Keith Duda also filed a retaliation complaint with the County Attorney's office.  *Id.* at ¶¶19–20.  He alleged that he did not get selected for the VNI Sergeant position because Caitlyn filed a complaint against Lt. Huffor at Keith's direction.  *Id.*  Campbell spoke with Lt. Mitchell and Cmdr. Hatch, conducted a formal interview with Keith Duda, and reviewed documents related to the VNI position.  *Id.* at ¶¶21–24.  On July 26, 2017 Campbell concluded that there had been no retaliation against Keith Duda.  *Id.* at ¶25.

Caitlyn Duda submitted a Colorado Open Records Act ("CORA") request to the County Attorney's office in early September 2017.  ECF No. 36 at ¶93.  That request was denied on

September 11, 2018.  *Id.* at ¶94.

In fall 2017 defendant ran for re-election as Sheriff.  *Id.* at ¶95.  In August, Colorado Springs resident Mike Angley entered the race for sheriff in opposition to defendant.  ECF No. 40-34 at 8:13–18.  Certain EPSO employees such as Lt. Huffor, his wife Janet Huffor, and Jackie Kirby actively supported defendant Elder.  ECF No. 39-6 at 57:11–61:2.  By contrast Keith Duda supported Mike Angley's candidacy.  ECF No. 36 at ¶96.  On October 10, 2017 Mike Angley's campaign posted an endorsement by Keith Duda on its website.  The announcement stated that Keith had joined "Angley's Posse."  ECF No. 36 at ¶¶98–99.  Keith Duda also volunteered for Angley's campaign.  He distributed campaign signs, handed out flyers door-to-door, spoke to residents on Angley's behalf, and attended campaign meetings.  ECF No. 15 at ¶¶100–04.

According to Undersheriff Joe Breister, several EPSO employees with allegiance to defendant Elder would report to him about the campaign and other matters.  ECF No. 39-2 at 21:1–20.  These "informants" would relay statements made during briefings or over dispatch and report whether someone like Keith Duda was talking about the administration or was campaigning for Mike Angley.  *Id.* at 21:12–22:8.  Undersheriff Breister mentioned Lt. Huffor, Janet Huffor, and Jackie Kirby as among these individuals.  ECF No. 39-6 at 60:4–61:2.

Sometime that fall defendant learned that Keith Duda planned to post a billboard to advertise for a website criticizing the Sheriff and his administration.  ECF No. 39-7 at 141:9–145:8.  The website was called "dirtyelder.com."  ECF No. 39-8.  It made negative allegations about defendant such as "Sheriff Bill Elder is corrupt."  The billboard mockup also stated it was "[p]aid for by Deputies currently working for Bill Elder."  *Id.*

In October 2017 Caitlyn Duda brought a purse that contained her powered-down cell

5

phone into the EPSO jail.  ECF No. 36 at ¶¶104–06; ECF No. 49-2 at 5.  Though there is no

EPSO policy prohibiting cell phones at work, under Standard Operating Procedure 2.03

employees working in secured jail areas must place personal cell phones in lockers or their cars.

ECF No. 36 at ¶108.  In response to this and other incidents, in December 2017 Caitlyn Duda

received a Letter of Counseling, a Letter of Reprimand, a two-day suspension, and six months of

probation.  ECF No. 40-2 at 1.  The letters and probation also addressed an incident in which

Caitlyn Duda purportedly disparaged Sgt. Tammi Murphy Kinner.  *Id.* at 3.

In November 2017 Mark Flynn of Employment Matters, LLC was hired by the County

Attorney to investigate allegations that Keith Duda was engaging in political activity while on

duty.  ECF No. 40-15.  For example, Sgt. Brown alleged that Keith Duda made disparaging

remarks about EPSO leadership at a meeting that could be construed as political.  *Id.* at 3.  Flynn

did not find these allegations proven by a preponderance of evidence.  *Id.* at 4.  Also in

November 2017, the Equal Employment Opportunity Commission ("EEOC") served the El Paso

County Sheriff's Office with two notices indicating that Keith Duda and Caitlyn Duda had filed

charges of discrimination against EPSO.  ECF Nos. 40-18, 40-19.

In January 2018 Keith Duda drove in his patrol car to the house of Trevor Long, then an

EPSO employee.  ECF No. 39-6 at 1–2; ECF No. 40-21 at 1.  Defendant initially implied Keith

Duda may have gone to Long's house while on duty to drop off Mike Angley campaign signs.

ECF No. 36 at 23.  However, Trevor Long attested that he never received campaign signs from

Keith Duda on that day or any other day.  ECF No. 39-10 at ¶¶10–11.

The El Paso County Republican Party held its County Assembly on March 24, 2018.  The

purpose of the assembly was to determine which candidates would appear on the ballot for the

Republican primary.  ECF No. 36 at ¶114.  Undersheriff Joe Breister stated that Sgt. Michael Pitt

told him that Lt. Huffor had confronted him at the Assembly.  ECF No. 39-2 at 80:12–22.  Pitt

also reported to Breister that Huffor had yelled at him and accused him of not being a "true

supporter" of defendant Elder.  *Id.* at 80:22–81:4.  Pitt left the Assembly without casting a ballot.

*Id.* at 81:21–23.  Undersheriff Breister relayed this incident to defendant and suggested referring

it to Internal Affairs for investigation.  *Id.* at 82:2–11.  Keith Duda also learned about this

incident and reported it to PSU.  ECF No. 36 at ¶118.  PSU investigated but found that Lt.

Huffor's conduct at the Assembly did not violate any EPSO policy.  *Id.* at ¶119.

　　Between spring and summer 2018 Mark Flynn conducted another investigation into

allegations of Keith Duda engaging in political activity while at work.  ECF No. 40-20 at 3.  Sgt.

Jennifer Vanderpool alleged that on April 3, 2018 Keith Duda made negative statements about

EPSO administration while on duty.  *Id.* at 4.  She also stated that Keith Duda asked her if she

knew which sheriff candidate she and her husband were leaning towards, and that he offered to

arrange a meeting between Sgt. Vanderpool, her husband, and Mike Angley.  *Id.*  Flynn found

these allegations to be more likely true than not.  *Id.*

　　During that investigation Lt. John David alleged that he had a work conversation with

Keith Duda on March 22, 2018 during which Keith mentioned Lt. David serving as a delegate at

an upcoming County Assembly.  *Id.* at 13.  Flynn found this allegation to be more likely true

than not.  *Id.* at 16.  Deputy Rachel Lamb alleged that on May 3, 2018 Keith Duda referenced

defendant as "your boy Elder" and criticized his handling of recent drug busts.  *Id.*  Flynn also

found these statements to be more likely true than not.  *Id.* at 19.

　　Flynn's investigation also reviewed allegations that Keith Duda had failed to respond

7

properly to duty-related critical incidents.  In February 2018 an EPSO call was put out to on duty

officers to respond to an active shooter.  ECF No. 40-20 at 26.  Lt. J.D. Ross asserted that Keith

Duda, who was on duty at the time, traveled away from the scene instead of towards it.  *Id.*  Lt.

Ross also alleged that on April 25, 2018 Keith Duda chose to stay on a scene with an unattended

death instead of reporting to a critical incident by reviewing a warrant and calling in a SWAT

team as requested.  ECF No. 40-22 at 3; ECF No. 40-20 at 29–30.  Finally, Lt. Ross claimed that

Keith Duda took too long (eight minutes) to leave the office after Lt. Ross called him to respond

to a felony suspect escape from Memorial Hospital.  *Id.* at 31.  The investigation further noted

that on June 16, 2018 Keith Duda called into dispatch while off-duty to obtain the names of two

Fountain Police officers who he believed may have committed a crime; i.e., removing Mike

Angley campaign signs that were publicly displayed.  *Id.* at 19–20.  On June 22, 2018 Keith

Duda was placed on Administrative Leave.  ECF No. 36 at ¶142.

Sometime during summer 2018 defendant sent an "Expectations Memo" to all EPSO

command staff.  ECF No. 36 at ¶124.  It read as follows:

> I expect you to be respectful and insist that others are as well. **YOU** represent **ME** not
> just the Sheriff's Office. Everything you do and say reflects on **ME**, not just the Sheriff's
> Office. **You are not free** to start rumors, engage in side bar or closed door discussions,
> or become outwardly critical of me or ANY member of staff. **I expect** you to be part of the
> team - act like a team - support the team - help and support your teammates. You are a
> member of my staff? You owe institutional loyalty. If you can't handle that expectation, if
> your heart is not in the requirements of this job, if your head is not behind me, it is time
> for you to step down or maybe even step out. Leave with your integrity intact. If you
> would rather complain behind closed doors or thru [sic] an anonymous website, point
> fingers, place blame or you do not stop those who do, **you are part of the problem**.
> People inside and outside of this organization see it and talk about it. I hear it, see it and
> watch it and I am tired of it. If you can't or won't recognize character issues, morality
> issues, ethical issues, then check out now because you will not survive. **I will take the
> stripes, bars and/or stars back.**

ECF No. 36 at ¶¶125–29 (emphases in original).

On May 31, 2018 Lt. Huffor and his wife each posted on Facebook about Keith Duda. Janet Huffor accused Keith Duda of "defamation and slanderous libel" and of conducting surveillance on her home and wrote that "the gloves are off."  ECF No. 36 at ¶¶130–31.  Lt. Huffor accused Keith Duda of campaigning for Mike Angley while on duty.  *Id.* at ¶132.

On June 11, 2018 *The Independent* ("Indy"), a Colorado Springs newspaper, published an article regarding Keith Duda's retaliation claims.  ECF No. 39-14.  The article mentions the sexual harassment allegations against Lt. Huffor, Keith Duda's internal complaint regarding this incident, the VNI position for which Keith Duda was not selected, and Caitlyn Duda's discipline following her cussing at an inmate.  *Id.* at 1.  It references the EEOC complaints filed by Keith and Caitlyn Duda and Keith Duda's retaliation allegation.  *Id.* at 2.  The article also discusses Keith's claims that he was falsely accused of political activity on duty while other EPSO employees engaged in political activity at work without any repercussions.  *Id.*

On June 12, 2018 defendant Elder signed a Notice of Intent to Terminate Keith Duda's employment at EPSO.  ECF Nos. 39-15, 39-20.  That same day Undersheriff Breister informed Keith that he was being investigated for a possible violation of confidentiality and that Keith was to report to another interview with Mark Flynn on June 13, 2018.  ECF No. 46 at ¶¶152–53.  The next day Flynn interviewed Keith about the article.  ECF No. 40-37 at 133:3–20; ECF No. 40-41 at 82:9–18.  Flynn briefed defendant on the interview.  Defendant then directed Lt. St. Charles to serve the Notice of Termination on Keith Duda.  ECF No. 40-41 at 80:21–25.

After Keith Duda's interview with Flynn ended, Lt. St. Charles handed Keith the Notice of Termination letter.  ECF No. 36 at ¶¶156–67.  The termination letter listed four reasons for defendant's decision to fire Keith Duda.  Those reasons were (1) Keith Duda's failure to respond

appropriately and reasonably to three critical incidents; (2) Mark Flynn's investigation which found instances of Keith Duda's conducting political activity while on duty; (3) Keith Duda's use of his sergeant position to obtain information from dispatch while off duty; and (4) Keith Duda's working on his private painting business while on duty.  ECF No. 40-30.

Plaintiff Keith Duda's employment at EPSO ended on June 13, 2018.  ECF No. 36 at ¶157.  Plaintiff Caitlyn Elder was still employed by EPSO at the time the parties' cross motions for summary judgment were filed earlier this year.  *Id.* at 6.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed their initial complaint in this action on November 9, 2018.  ECF No. 1. They filed an amended complaint on March 20, 2019.  ECF No. 15.  The complaint alleges that defendant unlawfully retaliated against (1) both plaintiffs for reporting sexual harassment and (2) Keith Duda for protected political speech and affiliation.  *Id.* at 2.  Plaintiffs claim that defendant violated their rights under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.  Keith Duda also seeks redress for alleged violations of his First Amendment rights pursuant 42 U.S.C. § 1983. *Id.* at 2–3.  Defendant filed an amended answer on January 17, 2020 denying all claims.  ECF No. 36.

On February 14, 2020 plaintiffs moved for partial summary judgment on a number of defendant's affirmative defenses and on multiple legal issues regarding Keith Duda's First Amendment claims.  ECF No. 39.  Defendant moved for summary judgment on all of plaintiffs' claims on February 28, 2020.  ECF No. 40.  On March 6, 2020 defendant filed a response to plaintiff's partial motion for summary judgment.  ECF No. 45.  Plaintiffs filed a response to defendant's motion March 20, 2020.  ECF No. 48.  Plaintiffs and defendant both additionally

filed replies on March 20, 2020 and April 3, 2020 respectively.  ECF Nos. 50, 51.

### III. STANDARD OF REVIEW

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment.  *See Concrete Works of Colo., Inc. v. City and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

When parties file cross motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.  *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Fed. Ins. Co.*, 213 F. Supp. 3d 1333, 1339 (D. Colo. 2016), *aff'd*, 734 F. App'x 586 (10th Cir. 2018).  Furthermore, "the reasonable inferences drawn from affidavits, attached exhibits, and depositions are rendered in the light most favorable to the non-prevailing party."  *Id.* (citing *Jacklovich v. Simmons*, 392 F.3d 420, 425 (10th Cir. 2004)).

11

## IV. ANALYSIS

### A. <u>Title VII retaliation claims</u>

#### 1. <u>Legal standard</u>

Plaintiffs both bring Title VII retaliation claims against defendant Bill Elder.  Under 42 U.S.C. § 2000e–3(a) an employer may not "discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."  To succeed on such a claim a plaintiff must prove that retaliation played a part in the employer's employment decision.  *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008).

The *McDonnell Douglas* burden-shifting framework applies in this case.  Under this pretext theory of retaliation, to establish a prima facie case of retaliation a plaintiff must show that "(1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."  *Fye*, 516 F.3d at 1227 (quoting *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004)).  Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-retaliatory reason for the adverse action.  If the defendant does so, the burden shifts back to the plaintiff to offer evidence that the reason is pretextual.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

##### a. <u>Protected action</u>

A retaliation claim requires a plaintiff to establish she engaged in action protected under Title VII.  Protected actions include bringing a discrimination charge, testifying, assisting, or participating in enforcement proceedings.  42 U.S.C. § 2000e–3(a).  They can range from filing formal charges to voicing informal complaints to supervisors.  *Delsa Brooke Sanderson v.*

*Wyoming Highway Patrol*, No. 19-8025, 2020 WL 5807835, at *3 (10th Cir. Sept. 30, 2020).

      b. <u>Adverse employment action</u>

Under the second element of a retaliation claim a plaintiff must prove that "a reasonable employee would have found the challenged action materially adverse." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). Materially adverse means an action that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citations omitted). The scope of adverse employment action is broader for retaliation than for discrimination. "[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64.

The existence of an adverse employment action is a case-by-case determination. It does not include "a mere inconvenience or an alteration of job responsibilities" but instead requires the employer's behavior to be materially adverse to the employee's job status. *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000); *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998). An adverse employment action must lead to "more than *de minimus* harm to or a *de minimus* impact on the employee's status or job opportunities." *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (internal quotation marks omitted).

The Tenth Circuit has addressed on numerous occasions what employer actions are adverse. Conduct "entailing 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits'" constitutes an adverse employment action. *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). The prospect of lost wages, benefits, or the job itself are also significant or material alterations to an employee's job

13

status.  *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1316 (10th Cir. 2006).  However, adverse

employment action is not necessarily limited to these acts.  *EEOC*, 644 F.3d at 1040.  For

example, conduct that harms employment prospects, such as a negative job reference, can also

count.  *Hillig*, 381 F.3d at 1033–35.

This court has deemed a performance improvement plan for a Colorado State Patrol

trooper to be materially adverse.  *Luchaco v. Colorado State Patrol*, No. 08-CV-02348-LTB-

KMT, 2010 WL 3430850, at *13 (D. Colo. Aug. 30, 2010).  The court reasoned that even if the

corrective action was correctly issued, it could dissuade the employee from making or supporting

a discrimination charge against the employer.  *Id.*  The Tenth Circuit has noted

> Disciplinary proceedings, such as warning letters and reprimands, can constitute an
> adverse employment action. A reprimand, however, will only constitute an adverse
> employment action if it adversely affects the terms and conditions of the plaintiff's
> employment -- for example, if it affects the likelihood that the plaintiff will be
> terminated, undermines the plaintiff's current position, or affects the plaintiff's future
> employment opportunities.

*Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005) (citations omitted).  This

court has also held that placing an employee on probation can be an adverse employment action.

*Dunn v. Shinseki*, 71 F. Supp. 3d 1188, 1192 (D. Colo. 2014).  Another court in this circuit has

agreed.  *Beck v. Figeac Aero N. Am., Inc.*, 382 F. Supp. 3d 1170, 1177 (D. Kan. 2019)

("probation is a negative disciplinary action an employer can take to dissuade an employee.").

c. Causal connection

To establish a causal connection, a plaintiff must present "evidence of circumstances that

justify an inference of retaliatory motive."  *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)

(quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)).  Temporal

proximity—when the protected conduct is closely followed by the adverse action—is often the

basis for inferring a causal connection. *Id.*  Normally three months or five months between the protected activity and the retaliatory action is too long to support a causation inference based on timing alone. *Wells v. Colo. DOT*, 325 F.3d 1205, 1217 (10th Cir. 2003).  If such a long timeline exists "the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Defendant argues that plaintiffs must establish "but-for" causation per the Supreme Court's decision in *Nassar. Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (". . . a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").  Plaintiffs counter that the Supreme Court's decision in *Nassar* addresses the ultimate burden of proof for a discrimination claim, not the burden for establishing a prima facie case.  They point out that at the summary judgment stage the burden is "not onerous" but instead is "simply one of production, not persuasion" and "involve[s] no credibility assessment." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000)).  Plaintiffs also note that the Tenth Circuit "has not construed *Nassar* to alter the well-established causation standard for a prima facie case of retaliation."  ECF No. 48 at 28.

Tenth Circuit case law is not particularly clear on this issue.  In *Foster* the court declined to answer this exact question of whether *Nassar* required but-for causation at the prima facie stage.  Instead it referenced its interpretation of *Nassar* on the *McDonnell Douglas* framework in *Ward. Foster v. Mountain Coal Co.*, LLC, 830 F.3d 1178, 1191 (10th Cir. 2016).  The court noted that "*Ward* [left] intact our precedent holding that an ADA retaliation plaintiff may rely

15

solely on temporal proximity to show causation during the prima facie stage," and that "*Nasser* has not altered the burden a plaintiff bears in supporting the causation element of a prima facie case in ADA retaliation."  *Id.  Foster* could suggest a lower burden at the prima facie stage.

By contrast, in *Ward* itself the Tenth Circuit noted that the Supreme Court "likened" the causation burden to the but-for standard.  *Ward*, 772 F.3d at 1203; *see also Doe v. Bd. of Cty. Comm'rs of Payne Cty., Okla.*, 613 F. App'x 743, 747 (10th Cir. 2015) (noting *Ward* interpreted *Nassar* and "concluded it stands for the proposition that the standard of causation for a Title VII retaliation claim is 'but for' causation.").  More recent cases have applied but-for causation to review claims at the summary judgment stage.  *See Bekkem v. Wilkie*, 915 F.3d 1258, 1273 (10th Cir. 2019); *Nealis v. CoxCom, LLC*, 731 F. App'x 787, 790 (10th Cir. 2018); *Woesler v. Utah Valley Univ.*, 725 F. App'x 610, 613 (10th Cir. 2018).  Read against these cases, *Foster* appears to apply narrowly to plaintiffs who are relying on temporal proximity.  I thus conclude that, when plaintiffs do not rely solely on temporal proximity, they must show evidence at the prima facie stage that their protected activities were a but-for cause of their adverse employment actions.

## 2. Caitlyn Duda's Title VII Retaliation Claim

There is no dispute that Caitlyn Duda engaged in protected activity.  In his answer defendant admits that she "opposed discrimination and retaliation" by Lt. Huffor and participated in an investigation regarding allegations of sexual harassment.  ECF No. 36 at ¶¶48, 161. Caitlyn Duda also filed an internal retaliation complaint after she received the May 2017 LOR. *Id.* at ¶164; ECF No. 40-2 at 5.  These actions fall within the protected activities of Title VII.

At the second step of her prima facie case, Caitlyn Duda alleges that two disciplinary

actions taken against her constitute retaliation for her protected activity.  The first is an LOR

from May 25, 2017 that placed her on 120 days of probation.  ECF No. 48-8.  Caitlyn states this

disciplinary action was lodged in retaliation for her participation in the investigation of sexual

harassment by Lt. Huffor.  ECF No. 15 at ¶163.  The second disciplinary action is a Letter of

Counseling from October 29, 2017, which Caitlyn claims was in retaliation for her requesting

CORA records.  ECF No. 40-17; ECF No. 15 at ¶165.

Defendant argues he is entitled to summary judgment on this element because these

disciplinary actions do not constitute adverse employment actions as a matter of law.  He claims

that neither action (1) constituted a significant change in employment status, (2) affected the

likelihood of termination, undermined her current position, or affected future employment, or (3)

caused more than "*de minimus*" harm or impact on her job or opportunities.  ECF No. 40 at 6.

To support this assertion defendant points to the fact that Caitlyn's request to transfer from

Detention Specialist back to Security Technician was granted.  ECF No. 40-33 at 15:11–18,

93:24–94:18.  He also notes she was not denied any transfers or promotions. ECF No. 40 at 6–7.

As discussed above, however, transfers and promotions are not the only material changes

that can constitute adverse employment actions.  Reprimands such as the letters Caitlyn received,

as well as probation, have been found to be adverse employment actions.  *Luchaco*, 2010 WL

3430850, at *13; *Dunn*, 71 F. Supp. 3d at 1192.  Being placed on probation subjected Caitlyn to

monthly evaluations for which her behavior was more closely scrutinized, which meant she

could more easily rack up additional violations.  ECF No. 48-8.  Furthermore, the letters state

that they are placed in "Personnel and Professional Standards files" and that further violations

could lead to termination.  ECF No. 40-17 at 1; ECF No. 48-8.  A later letter from December

2017 lists allegations of misconduct going back to 2014, which indicates that EPSO considers earlier incidents when disciplining employees.  ECF No. 40-2.  I disagree with defendant's strict interpretation of these disciplinary actions.  A jury could reasonably find that Caitlyn Duda suffered one or more adverse employment actions.

Defendant next seeks summary judgment on the basis that Caitlyn Duda cannot show a causal connection between her protected activity and any retaliatory action.  Defendant points to the six-month time gap between Caitlyn's interview about the sexual harassment and the May LOR.  ECF No. 40 at 8–9.  He asserts the May 25 letter was prompted by an inmate filing grievances against Caitlyn and her use of profanity against him.  He also suggests that Lt. Huffor's involvement in the investigation and disciplinary action against Caitlyn was minimal. *Id.*

In her response plaintiff Caitlyn Duda argues that the timeline is actually only two months.  ECF No. 48 at 24–25.  Lt. Huffor himself received a Letter of Counseling regarding the sexual harassment on January 20, 2017, and two months later he prepared a timeline of reported incidents between Caitlyn and inmates.  ECF No. 36 at ¶¶51, 53; ECF No. 49-1.  Lt. King then instructed Lt. Huffor to stay out of the investigation because Caitlyn was involved in his own sexual harassment investigation.  ECF No. 49-2 at 1.  I do not find plaintiff's argument convincing.  The retaliation Caitlyn alleges in her complaint is her May 2017 LOR, not Lt. Huffor's timeline.  ECF No. 15 at ¶163.  There is insufficient evidence of temporal proximity to establish causal connection for the May 2017 LOR on this basis alone.

There are other facts, however, supporting a causal connection for Caitlyn Duda's retaliation claim on the May 2017 LOR.  First, she testified that other civilians, deputies,

18

sergeants, lieutenants, and commanders have used profanity in the jail without similar reprimands to the one she received.  ECF No. 48-10 at 114:18–115:10.  When Caitlyn asked why she received what she perceived to be unduly harsh discipline, she reported being told by her supervisor that Lt. Huffor had initiated the investigation.  ECF No. 40-33 at 8–21.  Second, while defendant notes the May 2017 LOR also referenced Caitlyn becoming physical with an inmate, she testified that she did so in response to the inmate approaching her and grabbing her wrist. ECF No. 40-33 at 75:5–10.  This possible self-defense justification is not mentioned in the LOR. Third, Lt. King stated that Lt. Huffor seemed upset about being removed from Caitlyn's investigation, and that Lt. Huffor explicitly referenced the County Attorney's rule of a six-month wait-time after an investigation to avoid an appearance of retaliation.  ECF No. 49-2 at 1–2.

Overall, I find that the facts demonstrate a genuine dispute as to whether there is a causal connection between the May 2017 LOR and Caitlyn's involvement in Lt. Huffor investigation. As I view the evidence, Caitlyn's case is weak.  Nonetheless I believe a reasonable jury could find that, but-for Caitlyn's participation in the investigation, she would not have received the LOR and 120 days of probation.

Plaintiff Caitlyn Duda next argues she was retaliated against for requesting records through CORA.  Defendant argues she has not established a causal connection between Caitlyn's CORA records request and the Letter of Counseling.  I disagree.  These two events are close in time—her request for records was in early September 2017 while the letter was in late October 2017. ECF No. 36 at ¶¶93, 104.  This suggests temporal proximity.  I find there is a genuine dispute as to a causal connection between the October 2017 letter and Caitlyn's CORA request.

A reasonable jury could find that plaintiff Caitlyn Duda has satisfied a prima facie case of

Title VII retaliation by defendant Elder.  Therefore, defendant's motion for summary judgment

on this claim is DENIED.  Because there are genuine disputes of material fact underlying

Caitlyn's prima facie case of retaliation, the burden has not yet shifted to defendant under

*McDonnell Douglas*.  I thus do not reach the issues of whether defendant has articulated a

legitimate, non-retaliatory reason for any adverse employment action, or whether plaintiff

Caitlyn Duda has provided evidence of pretext.

### 3. Keith Duda's Title VII Retaliation Claim

There is no dispute plaintiff Keith Duda engaged in protected activity under Title VII.

He too "opposed discrimination and retaliation" by Lt. Huffor, as admitted by defendant.  ECF

No. 36 at ¶171.  Keith submitted verbal and written reports about Lt. Huffor's alleged sexual

harassment.  *Id.* at ¶¶42–45.  These are protected activities, and defendant does not dispute this.

Defendant does contest whether Keith Duda suffered an adverse employment action.

Keith Duda's complaint asserts two adverse actions—denying him a transfer and terminating

him.  ECF No. 15 at ¶178.  There is no question that firing an employee is an adverse

employment action.  *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004).  Defendant

does not dispute this.  But he does dispute that the failure to consider Keith for the VNI transfer

constitutes an adverse employment action.

To argue that Keith cannot prove this is an adverse action, defendant points to *Sanchez*, a

case that discusses a lateral transfer.  According to the *Sanchez* court, a "purely lateral

transfer"—a transfer with largely the same salary and benefits and similar duties as the original

position—is not an adverse employment action.  *Sanchez*, 164 F.3d at 532.  But the issue in

*Sanchez* was whether a transfer constituted an adverse action for purposes of a discrimination

20

claim, not a retaliation claim.  As discussed above, the scope of adverse actions is broader for retaliation.  Defendant's use of this case is therefore not persuasive.

Meanwhile *Burlington* recognized "retaliatory work assignments" as a classic retaliation action.  The court left the jury to answer whether a reassignment from one set of duties to another, when both fit under the same job description, was an adverse employment action. *Burlington*, 548 U.S. at 70–71.  Here affidavits from multiple EPSO employees insist the VNI Sergeant position is not a "promotion" but is merely a "lateral transfer."  ECF No. 40-9 at ¶6; ECF No. 40-12 at ¶6.  But the record suggests that the VNI Sergeant position had different duties and benefits than a regular Sergeant position.  The former required a full year of Sergeant experience, whereas the latter merely required three years of law enforcement or detentions experience.  ECF Nos. 40-11, 39-17.  Chief Shannon sought someone with prior VNI experience, not just any old Sergeant, for the transfer.  ECF No. 40-9 at ¶¶8–9.  Furthermore, the position was coveted by multiple sergeants.  This indicates that working in a unit focused on narcotics, intelligence, and "vice" may carry more prestige than a regular sergeant position.  I find that there is a genuine dispute of material fact as to whether EPSO's removing Keith Duda from reconsideration for the VNI Sergeant position constitutes a materially adverse action.  As in *Burlington* this question is best left to the jury.

I next assess whether there is a genuine dispute as to whether Keith Duda's transfer or termination were retaliatory actions resulting from his engagement in protected activity.  In his response brief Keith Duda presents no facts linking his termination to any protected activity of his under Title VII.  In fact, he does not address his termination in the context of Title VII retaliation at all.  ECF No. 48 at 23–24, 25–27.  There is thus no genuine dispute regarding a

causal connection between Keith's termination and his Title VII protected activity.

Keith Duda does address the VNI transfer in his response brief. Defendant argues plaintiff cannot show that "but-for" his or his daughter's involvement in the Lt. Huffor investigation, or Caitlyn's retaliation complaint, he would not have been removed from consideration for the VNI transfer. Plaintiff's response points to the fact that Caitlyn made her complaint of Title VII retaliation to Human Resources on June 9, 2017. ECF No. 36 at ¶78. That was the same day Lt. Mitchell phoned Keith to ask if there was anything of which he should be aware and also told Keith that he was no longer a candidate for the position. *Id.* at ¶¶80–83.

Defendant contends the undisputed evidence shows that Lt. Mitchell called Keith in the morning, while Caitlyn contacted Human Resources in the afternoon after the decision to not move Keith forward had already been made. ECF No. 51 at 7–8; ECF No. 40-5 at 1; ECF No. 40-12 at 2. The record is not as clear as defendant asserts. I agree it is undisputed that Caitlyn Duda's phone call was in the afternoon. However, the timeline for when the decision occurred to remove Keith from consideration in the VNI Sergeant process is more opaque.

In his affidavit Lt. Mitchell wrote

I sent an email on June 9, 2017, to EPSO Cmdr. Hatch informing him that I set the oral boards for Thursday, June 15, 2017. Cmdr. Hatch called me after I sent the email and told me to stand-by on the oral boards as one candidate may not be going forward.

ECF No. 40-12 at 2. That paragraph lists no time of day. He later states that he attempted to contact Sgt. Duda and Sgt. Manzanilla in the "late afternoon and evening hours." *Id.* Furthermore, in his deposition Lt. Mitchell states Cmdr. Hatch's phone call telling him to postpone the board interviews was June 12, not June 9. ECF No. 40-39 at 30:1–23. Defendant asserts that EPSO personnel were not aware of Caitlyn's complaint until a later date based on

Casey Campbell's affidavit.  That document alternately lists May 12, 2017 and June 12, 2017 as the dates when she informed EPSO about the complaint.  While I assume the May date is a mistake, the June date matches the date Lt. Mitchell stated in his deposition.  I am also wary of putting complete faith in affidavits prepared for litigation over live testimony by witnesses.  The extremely close timing between the retaliation complaint and Keith's removal from the VNI process suggests it is at least possible these two events are not related by coincidence.  I conclude there is a genuine dispute of material fact with respect to causation for Keith Duda's Title VII retaliation claim as to the VNI transfer.

No reasonable jury could find that Keith Duda has established a prima facie case of Title VII retaliation relating to Keith's termination, because Keith presented no evidence of a causal connection between his firing and his protected activity.  Defendant's motion for summary judgment on Title VII retaliation is thus GRANTED only as to Keith's termination.

However, a reasonable jury could find that plaintiff Keith Duda has established a prima facie case of Title VII retaliation by defendant Elder relating to the VNI transfer.  Therefore, defendant's motion for summary judgment on this claim is DENIED only as to the VNI transfer.  Because the burden has not shifted to defendant under *McDonnell Douglas*, I do not address whether he has articulated a legitimate, non-retaliatory reason for any adverse action, or whether plaintiff Keith Duda has provided evidence of pretext.

   **B. Keith Duda's First Amendment retaliation claim**

      1. Whether summary judgment is appropriate under *Heffernan*

Defendant argues I must grant summary judgment because the Supreme Court recently recognized that a public employer should not be subject to a First Amendment retaliation claim

when the employee was dismissed pursuant to a neutral, constitutional policy prohibiting

political speech.  The court noted evidence suggesting the plaintiff was fired for violating a

"different and neutral policy prohibiting police officers from overt involvement in any political

campaign."  *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1419 (2016).  The court

remanded the case to the Third Circuit to determine this and other issues.  *Id.*

Defendant asserts that its policy prohibiting on duty political activity is both neutral and

constitutional, and that Keith Duda's termination resulted from his policy violations, not from his

protected speech.  Plaintiff Keith Duda disputes the neutrality and constitutionality of the EPSO

policy, alleging it was not uniformly or fairly applied to all political activity.

Keith points to numerous facts supporting his assertion.  Deputy Jennifer Arndt told Mark

Flynn that she "heard more political talk in my ten years at EPSO than I have heard in any other

work environment."  ECF No. 39-4 at 1.  Lt. Mitchell reported hearing Janet Huffor and Jackie

Kirby verbally supporting defendant Elder's reelection while on duty.  ECF No. 39-6 at 60:4–12.

Lt. Mitchell also reported hearing Bill Huffor frequently engage in political talk at work.  Huffor

expressed support for defendant's campaign and chastised EPSO employees for supporting other

candidates.  ECF No. 39-6 at 57:23–59:15.  Lt. Mitchell testified he himself was chastised by

Huffor for not attending political events for defendant.  *Id.*  Undersheriff Breister also recalled an

incident in which Sgt. Mike Pitt reported that Lt. Huffor accused him of not being a "true

supporter" of Elder and screaming and yelling at him.  ECF No. 39-2 at 80:22–81:4.  There is no

evidence suggesting these incidents were ever investigated.  Nor has defendant brought any

evidence to the Court's attention indicating that EPSO employees beside Keith were investigated

for on duty political activity.  I also note that the "Expectations Memo" issued by defendant

suggests a "my way or the highway" stance and could be perceived as chilling speech by the opposition.  ECF No. 36 at ¶¶125–29.  The record thus reveals a genuine dispute regarding, at a minimum, the neutrality of how EPSO's policy was applied.

Furthermore, there is a genuine factual dispute about whether Keith Duda actually violated the policy, and whether his termination was based on those purported violations.  Jennifer Arndt disputed Sgt. Brown's recollection of political statements purportedly made by Keith during a Crisis Negotiation Unit meeting.  ECF No. 39-4 at 2.  Keith himself disputed that he made the on duty statements alleged by Sgt. Vanderpool, Lt. David, and Deputy Lamb, and he testified that he did not engage in political speech or campaigning while on duty.  ECF No. 40-20; ECF No. 48-1 at 31:12–32:14.  This conflict reflects a prototypical "he said, she said" credibility problem best suited for a jury.  A reasonable jury could find that Keith did not violate EPSO's policy.  Defendant's motion for summary judgment on Keith Duda's First Amendment retaliation claim is thus DENIED on this ground.

2. Whether summary judgment is appropriate under the *Garetti-Pickering* test

The Supreme Court has long held that "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."  *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).  On the one hand, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom."  *Id.*  On the other hand, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively."  *Id.*

This Court reviews Keith Duda's First Amendment retaliation claim under the familiar

*Garcetti/Pickering* test.  The five elements of the test are:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017) (citing *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014)).  "The first three steps concern questions of law for the courts, and the last two concern questions of fact."  *Id.*  Keith argues he is entitled to summary judgment on the first, second, and third prongs.  ECF No. 39 at 18–19.  Defendant counters that plaintiff cannot satisfy the third, fourth, and fifth prongs of the test.  ECF No. 40 at 14–15.

### a. Prong one: Whether the speech was pursuant to an employee's official duties

Defendant concedes the first prong of the test.  ECF No. 40 at 16.  I therefore GRANT summary judgment to plaintiff Keith Duda on the question of whether his speech was made pursuant to his official duties as an EPSO employee.

### b. Prong two: Whether the speech was on a matter of public concern

The speech in question under the second prong is (1) Keith Duda's campaigning on behalf of Mike Angely for EPSO sheriff, and (2) his discussion with a reporter for the June 11, 2018 article in *The Independent*.  Matters of public concern are "those of interest to the community, whether for social, political, or other reasons."  *Lytle v. City of Haysville, Kan.*, 138 F.3d 857, 863 (10th Cir. 1998).  When determining which speech falls into this category, courts "look to whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee."  *Lander v. Summit County Sch. Dist.*, 109 Fed. App'x. 215,

218 (10th Cir. 2004) (internal quotation marks omitted).  Speech regarding internal personnel disputes does not constitute speech on matters of public concern, while speech regarding the discharge of government duties does.  *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).  Courts consider the "content, form, and context of the given statement . . . ."  *Id.*  Courts also consider the speaker's motive and subjective intent.  *Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994); *Schalk v. Gallemore*, 906 F.2d 491, 495 (10th Cir. 1990).

There is no genuine dispute that Keith Duda's campaigning for Mike Angley constitutes speech on a matter of public concern.  Speech about a public election is "undoubtedly a matter of public concern."  *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007); *see also Bass v. Richards*, 308 F.3d 1081, 1089 (10th Cir. 2002).  The election of the next EPSO sheriff is inherently of public concern as a political race impacting law enforcement across El Paso County.  Indeed, defendant does not contest this, focusing his argument on whether Keith's statements in article fit under prong two.  *See generally* ECF No. 45 at 10–13.  I therefore GRANT plaintiff's motion for summary judgment as to whether his campaigning for Mike Angley constitutes speech on a matter of public concern.

I next analyze Keith Duda's speech specifically on the sexual harassment allegations against Lt. Huffor.  Plaintiff indicates this speech is indisputably on an issue of public concern because it is improper or illegal conduct.  He cites to cases holding that statements on "official impropriety," "illegal conduct," or "corruption, impropriety, or other malfeasance" by public officials fall under this umbrella.  *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331 (10th Cir. 2007); *Brammer-Hoelter*, 492 F.3d at 1205, 1207; *Prager v. LaFaver*, 180 F.3d 1185, 1191 (10th Cir. 1999).  According to plaintiff, the law is clear that sexual harassment complaints

27

are speech on a matter of public concern.  *Wulf v. City of Wichita*, 883 F.2d 842, 849–50 (10th

Cir. 1989).  Defendant disagrees.

Citing to a more recent case, defendant asserts that the purpose of Keith Duda's speech

alleging retaliation addressed a personal grievance, not a matter of public concern.  ECF No. 40

at 17; *Woodward v. City of Worland*, 977 F.2d 1392, 1403–04 (10th Cir. 1992).  I agree with

plaintiff.  I do not find *Woodward* to be analogous to the situation here.  That case involved

plaintiffs who themselves were sexually harassed and reported the harassment—i.e. they

engaged in protected speech—to make the harassment stop.  *Id.* at 1396.  Here, by contrast,

Keith Duda was not himself harassed but claims to have reported the harassment in order to

comply with EPSO policy and supervisor instructions.  ECF No. 15 at ¶¶41, 44–45.

This is not the end of the inquiry, however.  Keith Duda argues more generally that there

is no genuine dispute that his speech, including his discussion of sexual harassment allegations,

was on matters of public concern.  He asserts his speech fits squarely within the case law.  He

also asserts that defendant himself, along with other EPSO employees, testified that these issues

were of public concern.  Defendant did admit that the information in the article was the sort the

community might be interested in knowing.  ECF No. 39-7 at 137:21–24.  Lt. St. Charles

testified citizens would find the article information "fascinating" and that people have "a

legitimate interest in how public agencies operate."  ECF No. 39-14 at 69:13–70:3.

Defendant counters by noting that Keith Duda's retaliation allegations were "made

during an ongoing personal employment grievance," i.e. the investigation into his possible policy

violations and his placement on administrative leave.  ECF No. 45 at 12.  Defendant suggests

that Keith Duda's speech was motivated by a desire to bolster his retaliation claim, not by a

genuine regard for matters of public concern. *Id.* In support of this argument defendant points to Lt. David's statement that Keith "is intentionally looking to elicit a disciplinary response that he would then characterize as retaliation." He also points to Sgt. Mahan's statement that "Keith's main motivation at work" is "to prepare for another lawsuit to cover his own ass or criticize administration." ECF No. 40-20 at 14, 25. In addition Lt. Ross suggested "it appears that Duda has demonstrated a pattern of doing these things to elicit disciplinary action" regarding Keith's alleged failure to respond properly to a critical incident. *Id.* at 29.

Keith Duda's statements appear to fall within the ambit of matters of public concern. They relate not just to a personal employment grievance but to concerns about the application of EPSO policies across employees, alleged suppression of certain political views, and potential tolerance of officer misconduct. Community members would naturally be interested in statements such as these about a public law enforcement agency. However, I must also consider the multiple statements suggesting Keith Duda spoke out only to advance his own interests. A reasonable jury could find an ulterior motive behind Keith's decision to exercise his First Amendment rights. This question turns on credibility, a classic jury issue. I therefore find there is a genuine dispute of material fact on whether Keith Duda's speech was on a matter of public concern. The cross-motions for summary judgement on this issue are DENIED.

  c. <u>Prong three: Whether the public employer's interests in efficiency outweigh the employee's free speech interests</u>

The third prong under *Garcetti/Pickering* requires a balance of the government employer's interest in efficiency against the employee's interests in free speech. *Dixon*, 533 F.3d at 1302. The only interest of the employer that can outweigh the employee's interest in free

speech is "avoiding direct disruption, *by the speech itself*, of the public employer's internal

operations and employment relationships." *Trant*, 754 F.3d at 1166 (citations omitted, emphasis

in original).  When courts perform this balancing test

> the statement will not be considered in a vacuum; the manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose. We have previously recognized as pertinent considerations whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Rankin v. McPherson*, 483 U.S. 378, 388 (1987).  The need for employee loyalty and confidence

is particularly acute in law enforcement.  *Moore v. City of Wynnewood*, 57 F.3d 924, 934 (10th

Cir. 1995).

　　Though this third prong is a question of law, it relies on the resolution of factual

questions.  The main fact in debate is whether Keith's speech disrupted or had significant

potential to disrupt EPSO's internal operations and employment relationships.  The Tenth Circuit

has articulated this requirement in slightly different ways.  *Finn* held that there must be evidence

that the speech caused "actual disruption of services" for the third prong to be resolved in the

employer's favor.  *Finn v. New Mexico*, 249 F.3d 1241, 1248–49 (10th Cir. 2001).  A later case

reasoned a public employer was not required to show the speech *in fact* disrupted relationships

and operations but only "to establish that the speech could potentially become so disruptive to

the [employer's] operations as to outweigh [plaintiff's] interest in the speech."  *Trant*, 754 F.3d

at 1166.  This is appropriate in certain circumstances because a public employer should not

"have to wait for speech actually to disrupt core operations before taking action."  *Moore*, 57

F.3d at 934.

Under this less stringent "reasonable prediction of disruption" approach the court will typically defer to the employer's reasonable predictions, "but those predictions must be supported by the presentation of specific evidence." *Cragg v. City of Osawatomie, Kan.*, 143 F.3d 1343, 1347 (10th Cir. 1998). This standard is typically only applicable when an employee is terminated shortly after her exercise of free speech. *Kent v. Martin*, 252 F.3d 1141, 1144 (10th Cir. 2001). Furthermore, "speculative assertions of workplace disruption" are insufficient to establish the government's interest in constraining free speech. *Finn*, 249 F.3d at 1249.

Plaintiff and defendant dispute whether Keith's speech in fact disrupted EPSO operations and employment relationships or whether there were reasonable predictions of disruption at EPSO. I again address in turn (1) Keith Duda's statements to *The Independent* published in its July 11, 2018 article and (2) his other political speech and campaigning.

Keith Duda focuses his argument solely on his statements to *The Independent*. He points to testimony by defendant and other EPSO employees indicating that the article did not disrupt EPSO operations to argue that he wins under prong three. For example, defendant Elder testified that there was no "blowup" in response to the July 11, 2018 article, that "no one paid any attention to what Pam Zubeck writes," and that the article did not cause any impact on the EPSO office operations. ECF No. 39-7 at 139:11–140:2. Elder also stated that it never caused any problems in the office. *Id.* at 140:3–6. Lt. St. Charles similarly stated that the article caused no problems at EPSO and did not prevent him from doing his job. ECF No. 39-18 at 72:4–10. Plaintiff also points to statements by Undersheriff Breister in his deposition indicating the same.[1]

---

[1] I am unable to confirm these statements are in the record because the deposition excerpts in question (Breister Dep. at 152–53) have not been provided to the Court.

Defendant does not address in his motion, response, or reply whether Keith Duda's statements to the press disrupted or even had the potential to disrupt EPSO operations.  Nor does defendant point to any facts contradicting his own testimony or the statements of Lt. St. Charles and Undersheriff Breister.  *See generally* ECF Nos. 42, 45, and 51.  I therefore find that there is no genuine dispute on this issue.  Because defendant has presented no evidence of disruption or predicted disruption based on the article, the balancing test under prong three weighs in Keith Duda's favor as a matter of law.  Plaintiff's motion for summary judgment on this question— solely with respect to Keith Duda's statements to the press for the article—is GRANTED.

Defendant, meanwhile, focuses his argument entirely on Keith Duda's "on-duty political speech and political activities."  ECF No. 40 at 19.  He points to numerous pieces of evidence to support his claim that this speech had "a detrimental impact on" EPSO working relationships and operations.  For example, Lt. David stated "[m]y perception is that deputies under Sgt. Duda are looking for other work, at least partly in response to [Keith's] negativity about the current administration."  ECF No. 40-20 at 14.  Sgt. Vanderpool reported that Keith's alleged comments and questions about the election made her feel "very uncomfortable."  *Id.* at 8.  Deputy Lamb reported being "taken aback" by and taking deep offense to purported comments by Keith Duda disparaging defendant Elder.  *Id.* at 16.  Lt. Ross informed investigator Flynn that it was his opinion Keith Duda did not want to respond to critical incidents.  *Id.* at 29.  Finally, defendant points to the Notice of Intent to Terminate he himself wrote, which states in part "[y]our activity, remarks and conduct, while on duty as a sergeant, have directly disrupted the efficiency of EPSO and subverted the good order, efficiency and discipline of my Office."  ECF No. 40-30 at 1.

Plaintiff Keith Duda disagrees with the accounts of Lt. David, Sgt. Vanderpool, Deputy

Lamb, and Lt. Ross.  He contends he did not even engage in the political speech or activity that

they report.  Keith Duda prior stated that he did not question Lt. David about being a delegate but

instead Lt. David broached the topic of his delegate status.  ECF No. 40-20 at 14.  He denied

making disparaging statements about defendant in front of Sgt. Vanderpool.  Plaintiff Keith

Duda also denied ever offering to arrange a meeting between Mike Angley and the Vanderpools

and points to evidence indicating his relationship with Sgt. Vanderpool soured long before the

alleged statements.  *Id.* at 9; ECF No. 48-5 at 10:3–11:7.  With respect to Deputy Lamb's

allegations, he asserted that he did not refer to defendant Elder at all during that conversation,

much less refer to him as "her boy."  ECF No. 40-20 at 16.  He also said he was speaking to

Deputy Lamb generally about marijuana cartel busting in relation to officer safety.  *Id.*

I find there is a genuine dispute as to whether Keith Duda's political speech and

activity—if it even occurred—disrupted or could potentially disrupt EPSO operations.  The

evidence presented by defendant consists largely of employees feeling uncomfortable or

offended based on Keith's purported statements.  Keith Duda, meanwhile, made self-serving

claims that he never made these statements to begin with.  Defendant Elder's claim in the

termination notice, that Keith's behavior disrupted EPSO efficiency, is similarly self-serving as

well as conclusory.

Lt. David's perception that officers under Keith Duda sought to be transferred points to a

more serious potential disruption at EPSO.  Allegations by Lt. Ross that Keith did not want to

respond to critical incidents are similarly more serious.  But defendant does not make clear the

links between these allegations and specific political statements of Keith Duda.

Ultimately, this Court believes this issue is also one of credibility.  There is sufficient

conflicting evidence that a reasonable jury could find for either party on disruption or reasonable predictions of disruption.  I therefore DENY the parties' cross motions for summary judgment as to whether defendant's interests outweigh Keith Duda's right to free speech regarding his campaigning for Mike Angley and other alleged on duty political speech.

> d. <u>Prong four: Whether the protected speech was a motivating factor in the adverse employment decision</u>

The fourth prong of *Garcetti/Pickering* requires a plaintiff to prove that her protected speech was a motivating factor in the adverse employment action.

> What constitutes a substantial motivating factor evades precise definition. An employee "need not prove his speech was the sole reason for defendants' action." Nor is the employee required to show "but-for" causation; that is, to demonstrate but-for the employee's speech the subsequent employment action would not have occurred. Rather, the employee must show the protected speech *played a substantial part* in the employer's decision to adversely alter the employee's conditions of employment.

*Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005) (citations omitted, emphasis in original).  Prong four is usually considered a factual question for the jury.  At the summary judgment stage an employee must nonetheless point to some evidence that links the employer's action to her speech.  *Id.*  "Speculation or hunches amidst rumor and innuendo will not suffice." *Id.* at 1189.  Evidence of causation could include close temporal proximity combined with an employer's knowledge of the protected speech; the employer expressing opposition to the speech; or the speech implicating the employer in wrongdoing or serious misconduct.  *Id.* (collecting cases); *see also Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon City*, 587 F.3d 1223, 1236 (10th Cir. 2009).  Conversely, a long delay between the speech and the adverse employment action, or evidence of intervening events, undermines inferences of retaliation.  *Id.*

Plaintiff Keith Duda points to the Notice of Intent to Terminate as evidence that his

political speech was indisputably a motivating factor in his termination.  The notice lists as one

reason for termination the Mark Flynn investigation that "sustained findings of numerous times

where [Keith Duda], while on duty as a sergeant, initiated and conducted political activity."  ECF

No. 40-30 at 1.  Plaintiff cites Lt. Mitchell's account of defendant Elder becoming "enraged,"

"cussing and yelling," and calling Keith Duda a "cancer" in response to the "dirtyelder.com"

billboard as evidence of defendant's opposition to Keith's political speech and activity.  ECF No.

39-6 at 48:9–49:2.  Defendant Elder testified that he considered "some information that was

supposedly in the article" in *The Independent* in discussions with his lawyers about this lawsuit

and while he was deciding whether to fire Keith Duda.  ECF No. 39-7 at 131:3–132:4.  Plaintiff

implies this can be interpreted as evidence that defendant considered Keith's political speech in

the article as part of his termination decision.  ECF No. 48 at 16.

Defendant counters that it was not Keith's political activity per se, but his violation of a

neutral policy prohibiting *on duty* political speech, that constituted a factor in his termination.

ECF No. 40 at 21.  The Notice of Intent to Terminate in fact explicitly cites a violation of policy,

not political speech or activity in general.  ECF No. 40-30 at 1.  But as discussed above, there is

a genuine dispute as to whether Keith Duda engaged in political speech on duty and whether the

policy was neutral or uniformly applied.  Defendant also argues that the article had no effect on

his decision to fire Keith because Elder did not read the article until after the termination.  ECF

No. 40 at 25 (analyzing prong five).

It is not clear exactly what was in defendant Elder's mind at the time he decided to

terminate plaintiff Keith Duda.  Prong four turns in part on Elder's credibility as a witness and in

part on a factfinder's interpretation of the other relevant evidence in the record.  I find that

plaintiff has produced enough evidence to bring this question to a jury.  I therefore DENY the cross motions for summary judgment on this issue.

>    e. Prong five: Whether defendant would have reached the same employment
>    decision in the absence of the protected conduct

Once an employee has established the first four prongs of the *Garcetti/Pickering* test, "the burden then shifts to the defendant, who must show by a preponderance of the evidence it would have reached the same employment decision in the absence of the protected activity." *Cragg*, 143 F.3d at 1346.  Like prong four, this is typically a factual question that goes to a jury.  Courts refer to this inquiry as the *Mt. Healthy* analysis.  "If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind."  *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Tenth Circuit has explained that the relevant question is "whether even without the improper motivation the alleged retaliatory action would have occurred."  *Trant*, 754 F.3d at 1168 (quoting *Anemone v. Metro Transp. Auth.*, 629 F.3d 97, 120 (2d Cir. 2011)).  Summary judgment for the defendant employer is appropriate under prong five when the employer would have taken the same actions against the plaintiff even absent the plaintiff's protected speech.  *Id.* (citing *Couch*, 587 F.3d at 1244–45).

In his motion defendant writes that "Keith provides no evidence that Elder had a retaliatory animus or motive for the termination or that such a motive was the 'but-for' cause of his termination . . . ."  ECF No. 40 at 23.  As a threshold matter this Court notes that the burden

for prong five falls on defendant, not plaintiff.  Defendant does nevertheless point to facts that support his general position.  Defendant Elder again asserts that Keith Duda was fired for his politicking *on duty*, not his political speech per se, pursuant to the language of the Notice of Intent to Terminate.  ECF No. 51 at 6.  He notes his own testimony that Keith's termination "was about the totality of the events. It was the result of all the events taking place over a large span of time." ECF No. 39-7 at 201:9–14.  Finally, defendant argues that Keith's statements in *The Independent* article could not have been a cause of termination.  ECF No. 40 at 24–25.  Elder stated both that he did not read the article until after Keith was fired, and that his briefing by Mark Flynn on the article's content did not change his mind regarding the termination.  ECF No. 39-7 at 130:9–22; ECF No. 40-36 at 119:5–15.

As presented by defendant, these facts could suggest that Elder would have terminated Keith Duda in the absence of Keith's protected speech.  However, a jury could also reasonably conclude that Keith's protected speech *did* motivate defendant to fire him.  By the time he fired Keith Duda, defendant Elder knew that Duda was pursuing a lawsuit and was in fact being advised by attorneys.  A competent lawyer would have advised him against any action that could evince retaliation, such as explicitly listing Keith's general politicking as the main or sole motivator for termination.  The timing of Keith's termination—two days after the article's publication date—could reasonably lead a jury to conclude that defendant's knowledge of the content influenced his decision, regardless of whether he personally read it.

In sum, at this stage defendant has failed to show there is no genuine dispute as to prong five of the *Garcetti/Pickering* test.  Elder will have the chance to carry his burden on this issue before a jury.  Defendant's motion for summary judgment on prong five is therefore DENIED.

### C. Keith Duda's First Amendment political affiliation claim

#### 1. Whether summary judgment is appropriate under *Heffernan*

Defendant argues here, as under the First Amendment retaliation claim, that he is entitled to summary judgment under *Heffernan*.  ECF No. 40 at 27.  Plaintiff Keith Duda counters that the EPSO policy prohibiting political speech on duty did not apply to political *affiliation*, and in fact stated that employees have the right "to support candidates of their choice."  ECF No. 40-31 at 3.  I agree.  Furthermore, I find *Heffernan* inapplicable to this claim for the same reason that I found it inapplicable to Keith Duda's First Amendment retaliation claim.  There is a genuine dispute of material fact regarding the neutrality of the EPSO policy.  The Court thus DENIES defendant's motion for summary judgment on this ground.

#### 2. Whether summary judgment is appropriate under the *Elrod/Branti* test

When a public employer takes adverse action against an employee based on the employee's political association or political beliefs, courts apply the test developed in *Elrod*, *Branti*, and their progeny.  *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir. 1999) (citing *Elrod v. Burns*, 427 U.S. 347 (1976) (plurality opinion); *Branti v. Finkel*, 445 U.S. 507 (1980).  To survive summary judgment, plaintiff Keith Duda must establish there is a genuine dispute of fact that (1) his political affiliation or beliefs were "substantial" or "motivating" factors behind his termination, and that (2) his employment position as a patrol sergeant at EPSO did not require political allegiance.  *Id.*  "Once a plaintiff proves political patronage was a substantial or motivating factor behind his dismissal, the burden of persuasion shifts to the defendant to prove, as an affirmative defense, that the discharge would have occurred regardless of any discriminatory political motivation."  *Gann v. Cline*, 519 F.3d 1090, 1093 (10th Cir. 2008)

(citing *Mason v. Okla. Tpk. Auth.*, 115 F.3d 1442, 1451 (10th Cir. 1997), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)).

Plaintiff Keith argues he is entitled to summary judgment on his political affiliation claim because the undisputed facts establish that his political affiliation was a motivating factor in his termination and that his sergeant position did not require political allegiance.  On the second *Elrod/Branti* factor defendant admits that Keith's employment did not require allegiance to him. ECF 39-19 at 2.  Since there is no genuine dispute I GRANT plaintiff's motion for summary judgment on whether Keith Duda's position required political allegiance to defendant.

The first factor under *Elrod/Branti* is more complicated.  Plaintiff Keith Duda points again to the Notice of Intent to Terminate.  Among the reasons for termination it lists that Keith "initiated and conducted political activity" on duty and used his position to obtain information for a political purpose.  ECF No. 40-30 at 1.  Keith also highlights statements allegedly made by defendant in response to Keith's plan to install the "dirtyelder.com" billboard.  These include Elder cussing and yelling about Keith, calling him a "cancer," and telling Lt. Mitchell that if Keith Duda "kept it up" Elder would "have him fired."  Ex. 39-6 at 48:17–51:5.  Finally, Keith Duda points to defendant's own testimony that his decision to fire Keith was based on the totality of events.  This totality, plaintiff avows, necessarily includes Keith's support for Angley, his attendance at Angley meetings and events, and his membership in "Angley's Posse."  ECF No. 48 at 19–20.  Plaintiff argues that these facts unequivocally show his campaigning for Mike Angley was a substantial factor in defendant's decision to fire him.

Defendant claims he is entitled to summary judgment on the political affiliation claim for the same reasons as for the First Amendment retaliation claim.  He says the undisputed facts

show that Keith's affiliation with Mike Angley was not a substantial motivating factor in the termination decision, and that defendant would have taken the same action in the absence of Keith's political affiliation.  ECF No. 40 at 28.  Defendant reiterates that Keith was fired due to multiple violations of EPSO policy, using his position to obtain information he was not entitled to, and failing to respond properly to critical incidents.  *Id.*  I have already found above that there are genuine disputes as to whether Keith's political speech was a substantial motivating factor in his termination.  The same analysis applies here.  Defendant appropriately references the termination notice and Mark Flynn's investigation.  However, a reasonable jury could still find that Keith's campaigning for Mike Angley angered defendant and partly motivated his dismissal.

Defendant more persuasively asserts the link between Keith's political affiliation and his termination is undermined by remoteness in time and intervening events.  ECF No. 45 at 17.  The announcement of Keith Duda's membership in Angley's Posse occurred in fall 2017, while his termination was in June 2018.  ECF No. 36 at ¶¶99, 159.  Defendant argues these events are too remote in time for retaliatory motive to be properly inferred.  ECF No. 45 at 17; *Maestas*, 416 F.3d at 1189.  Similarly, defendant says that the complaints against Keith by his co-workers and Flynn's investigation constitute intervening events that undermine any retaliatory motive.  *Id.*

Defendant is correct that this evidence weakens Keith Duda's affiliation claim.  But the ultimate question of whether the claim succeeds turns on interpretation of conflicting evidence.  I find there is a genuine dispute as to whether Keith's political affiliation was a motivating factor in his firing.  The cross motions for summary judgment are therefore DENIED on this issue.

**D. Defendant's affirmative defenses**

1. Qualified immunity

Defendant argues that he is entitled to qualified immunity on Keith Duda's First Amendment claims.  ECF No. 40 at 30.  To avoid application of qualified immunity, a plaintiff must prove that (1) defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time they were allegedly violated.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan,* 555 U.S. 223, 232 (2009).  A reviewing court has discretion to address either prong first.  *Pearson*, 555 U.S. at 236.  Defendant argues he is entitled to qualified immunity because Keith Duda cannot establish a constitutional violation.  I have already concluded above that there are genuine disputes of material fact regarding Keith Duda's alleged constitutional violations.  It would thus be premature to grant qualified immunity on this basis.

Defendant next urges this Court to hold that the constitutional rights Keith mentions were not clearly established at the time of the alleged violations.  A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he was doing violates that right.  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (internal quotations omitted).  "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts existing at the time of the alleged violation."  *Ali v. Duboise*, 763 Fed. App'x. 645, 650 (10th Cir. 2019) (unpublished) (citing *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017)) (internal quotations omitted).  Clearly established law should not be defined at a high level of generality.  *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (internal quotations omitted).  "Although a plaintiff need not identify a case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate."  *Ali*, 763 F. App'x at 650 (citing *Mullenix*, 577 U.S. at 12) (internal quotations omitted);

41

see also *White*, 137 S.Ct. at 551.

Defendant articulates the question at this second prong as follows: "whether, on the date of the alleged violation, every reasonable official would have known that terminating a sheriff's deputy for multiple policy violations, including violation of a neutral and constitutional policy prohibiting on duty political activity, contravened the First Amendment."  ECF No. 45 at 19. Based on this articulation, defendant contends, plaintiff Keith Duda will be unable to prove that such a right was clearly established at the time of the alleged violation.  In response plaintiff cites two cases to support his argument that his rights to political affiliation and to free speech were clearly established at the time of the alleged violations.  *Jantzen*, 188 F.3d at 1250–51 (political affiliation and political speech); *Wulf*, 883 F.2d at 849–50, 857–58 (speech reporting sexual harassment, corruption, and misfeasance).  Defendant contends these cases do not apply.

In *Jantzen* three plaintiffs worked for a sheriff but actively campaigned for his opponent in an upcoming election.  *Jantzen*, 188 F.3d at 1250–51.  After their incumbent boss won re-election he fired all three of them.  The plaintiffs sued.  The district court held that the defendant was entitled to qualified immunity.  The Court of Appeals reversed, concluding that the defendant "should have known that it would be unconstitutional to terminate [plaintiffs] for affiliating with and/or believing in a particular candidate.  Accordingly, we conclude that Hawkins is not entitled to qualified immunity . . ."  *Id.* at 1259.

Defendant argues this case is inapposite because Keith Duda wasn't fired for supporting defendant's political opponent, but instead he was fired for multiple policy violations.  I disagree.  Defendant attempts to collapse prongs one and two of the qualified immunity test by effectively arguing the record shows Keith Duda's political affiliation rights were not violated.

The issue of whether Keith Duda was terminated for various policy violations or performance issues versus for his political affiliation and speech is a factual question. I have already concluded above that a reasonable juror could interpret the evidence either way. I therefore cannot agree with defendant's articulation of the constitutional right. Keith Duda alleges that he was terminated in part due to his political affiliation to Mike Angley and his refusal to support defendant's bid for reelection. Pursuant to *Jantzen* he alleges a clearly established right.

In *Wulf* a police officer wrote a letter criticizing the Fraternal Order of Police ("FOP") of Kansas. He alleged "interference with the right of supervisory police officers to join the FOP; unfair treatment of the FOP private club vis-a-vis other private clubs; misappropriation and misuse of public funds; and sexual harassment of one officer by a supervisor." *Wulf*, 883 F.2d at 857. The Tenth Circuit ultimately concluded qualified immunity did not apply because "a reasonable police chief should have been on notice that it would be a violation of the First Amendment to terminate a police officer who wrote a letter alleging, *inter alia*, anti-union animus on the part of the police chief" and other misconduct. *Id.* at 867.

Defendant counters plaintiff's reliance on *Wulf* by pointing to *Woodward*. Defendant asserts that case stands for the proposition that a report of sexual harassment does not involve matters of public concern because it is a mere personal grievance. *Woodward*, 977 F.2d at 1403–04. But as discussed earlier, the facts here differ significantly from those in *Woodward*. There, the plaintiffs were themselves victims of sexual harassment and their goal in reporting it was to make the harassment stop. By contrast, Keith Duda was not himself harassed but instead spoke out about alleged sexual harassment to comply with policy and out of concern for EPSO culture and practices. His reporting of Lt. Huffor's purported sexual harassment was not a personal

grievance as in *Woodward*. Keith Duda, like the *Wulf* plaintiff, made a report alleging misconduct by a police officer. And like in *Wulf*, Keith alleges he was terminated partly as a result of that reporting. Here too I find that the constitutional right on which Keith Duda bases his claim was clearly established at the time of the alleged violation.

Finally, defendant argues he is entitled to qualified immunity because of *Lytle*, a case in which the Tenth Circuit affirmed qualified immunity against a First Amendment retaliation claim. Defendant claims the plaintiff in that case, like Keith Duda, "rushed to speak to the press about an alleged malfeasance without first pursuing his grievance internally." ECF No. 45 at 19–20 (citing *Lytle*, 138 F.3d at 866). But here Keith Duda *did* first use internal processes. He reported the alleged sexual harassment to EPSO more than a year before speaking with the press. ECF No. 15 at ¶¶42–45. He also reported alleged instances of on duty political speech by defendant's supporters to the County Attorney weeks before the article. *Id.* at ¶134. Furthermore, the court's decision in *Lytle* was based largely on the plaintiff's reports to the press and others being "unnecessarily disruptive" and lacking a reasonable factual basis. *Lytle*, 138 F.3d at 866–67. Conversely, here defendant insisted that *The Independent* article caused no disruption at all, and in fact that he knew barely anyone who had read it. ECF No. 39-7 at 139:11–140:6. Keith also has a reasonable factual basis for his reports sufficient to bring his claims to a jury. Thus, *Lytle* does not control.

Defendant is not entitled to qualified immunity on Keith Duda's First Amendment claims. Defendant's motion for summary judgment on this issue is therefore DENIED.

### 2. Bona fide merit system

In his amended answer defendant asserts the bonda fide merit system affirmative defense.

44

He writes "Defendant's actions towards Plaintiff Keith Duda with regard to the VNI position were taken based on a bona fide merit system." ECF No. 36 at 21. Plaintiffs argue in their motion that the bona fide merit system defense applies only to Title VII discrimination claims and claims under the Equal Pay Act, whereas here Keith Duda alleges only a Title VII retaliation claim. ECF No. 39 at 11–12. Defendant responds that this defense is another way of saying he had a legitimate, nonretaliatory reason for not hiring Keith Duda for the VNI position. ECF No. 45 at 20. This articulation is merely the second step of the *McDonnell Douglas* burden shifting framework. Plaintiffs concede this framework applies, and defendant may of course defend himself under that framework. I therefore find the issue of affirmative defense six MOOT.

### 3. No tangible employment action

In his amended answer defendant asserts as an affirmative defense that "[n]o tangible employment action was taken against Plaintiffs." ECF No. 36 at 23. Plaintiffs move for summary judgment on this defense because, they argue, the "tangible" employment action requirement applies only to Title VII discrimination claims, not retaliation claims. ECF No. 39 at 15–16. Defendant responds that summary judgment is inappropriate because a move to the VNI Sergeant position for Keith would have been a lateral transfer and Caitlyn was not demoted but asked to be transferred. ECF No. 45 at 20.

I agree that only Title VII discrimination claims, not retaliation claims, require showing a tangible employment action. As discussed above, the scope of adverse employment actions for retaliation claims is broader and merely requires the action be "materially adverse." *Burlington*, 548 U.S. at 64–65. Furthermore, defendant's response does not point to authority indicating this affirmative defense applies but instead reiterates his argument that neither plaintiff has proven

45

they suffered an adverse employment action.  This is a matter for trial under plaintiffs' prima

facie cases.  I therefore GRANT summary judgment for plaintiffs as to defense twenty-one.

                4. <u>After-acquired evidence, business necessity, and exercise of reasonable care</u>

In his response to plaintiffs' motion, defendant concedes that these three defenses are

inapplicable upon the completion of discovery.  ECF No. 45 at 20.  The Court therefore

GRANTS summary judgment to plaintiffs as to these affirmative defenses.

## ORDER

The Court DENIES in part and GRANTS in part the parties' cross motions for summary

judgment as follows:

1. Defendant's motion for summary judgment on Caitlyn Duda's Title VII retaliation claim
   (First Cause of Action) is DENIED.

2. Defendant's motion for summary judgment on Keith Duda's Title VII retaliation claim
   (Second Cause of Action) is GRANTED as to Keith's termination.  It is DENIED as to
   the VNI transfer.

3. For Keith Duda's First Amendment retaliation claim (Third Cause of Action) I GRANT
   plaintiff's motion for summary judgment as to prong one, whether his speech was made
   pursuant to his official duties.  I also GRANT plaintiff's motion as to prong two, whether
   Keith Duda's speech was on a matter of public concern, but *only* for his campaigning for
   Mike Angley.  I DENY the parties' cross motions for summary judgment on prong two as
   it applies to his speech to a reporter for *The Independent* article.  I GRANT plaintiff's
   motion on prong three, balancing free speech interests against the employer's interests,
   *solely* as to Keith Duda's statements to the press underlying *The Independent* article.  I

DENY the parties' cross motions as to prong three regarding Keith's campaigning for Mike Angley.  Finally, I DENY defendant's motion for summary judgment as to prongs four and five.

4. For Keith Duda's First Amendment political affiliation claim (Fourth Cause of Action), I DENY the parties' cross motions for summary judgment as to prong one, whether Keith Duda's political affiliation or beliefs were "substantial" or "motivating" factors behind his termination.  I GRANT plaintiff's motion for summary judgment as to prong two, whether Keith Duda's employment required political allegiance.

5. Defendant's motion for summary judgment as to the affirmative defense of qualified immunity defense is DENIED.

6. Plaintiffs' motion for summary judgment as to the affirmative defense of a bona fide merit system is MOOT.

7. Plaintiffs' motion for summary judgment as to the affirmative defense of no tangible employment action is GRANTED.

8. Plaintiffs' motion for summary judgment as to the affirmative defenses of after-acquired evidence, business necessity, and exercise of reasonable care is GRANTED.

DATED this 27th day of October, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge